[No. 13119.   Department One.   October 9, 1916.]

# UNION SECURITIES COMPANY, *Respondent*, v. R. P. SMITH *et al., Appellants.*[1]

HUSBAND AND WIFE—SEPARATE PROPERTY—ORAL AGREEMENTS AFTER MARRIAGE—VALIDITY.   An oral agreement between husband and wife after marriage that property inherited by the wife and whatever she acquired should be hers and go to her children upon her death and that whatever he acquired and his personal earnings should be his and go to his children by a former marriage, continuously acted upon, is valid and makes the property the separate estate of each.

SAME—COMMUNITY OR SEPARATE DEBT—BOND OF HUSBAND.   Where a husband purchased corporate stock with his separate estate, and signed a bond as a stockholder for the benefit of the corporation, the bond is not a community debt.

SAME — COMMUNITY PROPERTY — PRESUMPTION — PURCHASE WITH WIFE'S SEPARATE FUNDS—EVIDENCE.   Although the purchase price of land was raised by the giving of joint notes and two mortgages by two communities, creating the presumption that the land purchased was the community property of both communities, an undivided one-half thereof will be held the separate property of one of the wives, where her separate property discharged one-half of the obligations and her husband contributed nothing to the purchase.

HUSBAND AND WIFE—COMMUNITY PROPERTY — BOND OF HUSBAND. Where a husband, holding stock as community property, executed a bond to secure the indebtedness of the company, the bond is a community debt.

FRAUDULENT CONVEYANCES — PREFERENCES — DEBT—BONA FIDES— EVIDENCE—SUFFICIENCY.   In an action to set aside conveyances by a judgment debtor to his mother as fraudulent as to creditors, upon an issue as to whether the conveyances were a lawful preference on a *bona fide* debt, vague and indefinite testimony as to events recently occurring and which if true could have been easily corroborated by clear and convincing evidence, but were not, is insufficient to overcome positive evidence that the grantor had paid a large portion of the debt by borrowing money at a bank and paid for the land by giving his own check in part payment of the debt to his mother.

SAME—PREFERENCES—FICTITIOUS DEBT—EFFECT.   While a debtor may prefer one of his creditors, even with the knowledge that it will hinder other creditors, the debt must be real and not exag-

[1]Reported in 160 Pac. 304.

gerated; hence, regardless of the rule that the property transferred must bear a reasonable proportion to the preferred debt, any security for a sum in excess of what is actually due is presumptively fraudulent, and vitiates the transfer as against creditors, not only as to the fictitious part, but *in toto*.

SAME—ACTIONS—SUBJECTING LAND TO JUDGMENT—AMOUNT. In an action to subject property fraudulently transferred to the lien of a judgment, any sum paid by a joint judgment debtor must be credited on the judgment.

Cross-appeals from a judgment of the superior court for Adams county, Linn, J., entered May 8, 1915, in favor of the plaintiff, in an action for equitable relief, tried to the court. Modified on plaintiff's appeal.

*Wm. O. Lewis* and *V. T. Tustin*, for appellants.

*G. E. Lovell*, for respondent.

ELLIS, J.—Action to set aside as fraudulent certain deeds and a mortgage of real estate, and to subject all of the property to the lien of a judgment held by plaintiff as assignee of the bank of Lind.

Prior to 1907, R. P. Smith and his son, Warren Smith, with a number of other farmers of Adams county, had become stockholders in the Farmers Warehouse Company of Lind, a cooperative company organized to facilitate the marketing of their grain. In 1907, these two and a number of other stockholders signed a bond guaranteeing the indebtedness of the warehouse company to the bank. On July 23, 1913, the bank brought suit on this bond. Summons was served on that day, and on June 10, 1914, it recovered a joint and several judgment in the sum of $5,474.74 against all of the signers of the bond.

On August 7, 1913, Warren Smith and wife conveyed to his mother, Janette P. Smith, wife of R. P. Smith, the north half of section 6, in township 16 north, range 35, E. W. M., which is called in the record the "Peasley land." Warren Smith had acquired title to this land in the spring of 1912.

On the same day, Warren Smith and wife executed to Janette P. Smith a mortgage covering the north half of section 26, in township 17 north, range 34, E. W. M., and the northeast quarter of section 32, in township 17 north, range 35, E. W. M., purporting to secure a debt of $15,000. This land is known as the "Warren Smith land." The deed was filed for record on June 6, 1914, the mortgage on June 9, 1914. One purpose of this suit was to declare this deed and mortgage fraudulent as to the plaintiff's judgment and to subject the land as belonging to Warren Smith to the judgment against him.

About August 7, 1913, Warren Smith and wife also executed to Janette P. Smith a chattel mortgage on all of their stock, teams and farming implements, purporting to secure a debt of $5,000. This was satisfied by a bill of sale of this property from Warren Smith and wife to Janette P. Smith, executed June 8, 1914, and recorded June 9, 1914. This transaction is not assailed.

In 1907, R. P. Smith and Warren Smith negotiated the purchase of the northeast quarter of section 4, in township 16 north, range 35, E. W. M., and the southeast quarter of section 32, in township 17 north, range 35, E. W. M., known as the "Cartwright land." Title was taken in the name of Janette P. Smith. The consideration paid was about $12,000. The money was raised, $8,000 at a bank on joint notes of Warren Smith and wife, Janette P. Smith and R. P. Smith, $1,750 by a mortgage given by Warren Smith and wife on their homestead, and $1,750 by a mortgage given by R. P. Smith and Janette P. Smith on their homestead. All of these obligations were paid in 1908. Plaintiff seeks to have this tract declared community property of R. P. and Janette P. Smith and subjected to the lien of its judgment.

In 1897 and prior thereto, Janette P. Smith acquired title to a half section of land known as the "Railroad land," and another tract of four hundred acres, known as the "Boyles land." Plaintiff sought to subject these, as community

property of R. P. and Janette Smith, to the lien of its judgment. But the only evidence on the subject shows, and it now seems to be conceded, that these two tracts, though acquired after her marriage with R. P. Smith some forty years ago, were paid for with money she inherited from her father before her marriage and are, therefore, Janette P. Smith's separate property.

The court adjudged: (1) that plaintiff's judgment as against R. P. Smith is a lien on the community property of R. P. and Janette Smith; (2) that an undivided one-half of the "Cartwright land" is community property of R. P. and Janette P. Smith, and as such subject to execution to satisfy the judgment; (3) that the mortgage covering the "Warren Smith land" is a valid mortgage; (4) that the "Peasley land" is the separate property of Janette P. Smith and is not subject to the lien of plaintiff's judgment.

Both parties having appealed, we shall designate them throughout as plaintiff and defendants. We shall consider each branch of the judgment separately.

I.    Both R. P. and Janette P. Smith testified that, during all of their married life, they have conducted their business separately; that, at the time of the marriage, she had a considerable amount of property inherited from her father; that, at or about that time, it was agreed between them that whatever she acquired should be hers and upon her death should go to her children, and that whatever he acquired and his personal earnings should be his and upon his death should go to his two children by a former marriage. Three disinterested witnesses who had known the Smiths for many years and had transacted business with both of them testified that they had always conducted their business separately. Their sons, Warren Smith and Newell Smith, the former thirty-eight years old, the latter twenty-nine, testified that such had been the case as long as they could remember. This evidence fairly establishes the agreement and shows that, in the main, it had been continuously acted upon. Though this

was an oral agreement, it does not appear that it was made before the marriage. It is not assailed as a contract made upon consideration of marriage, hence void because verbal, as we held in *Koontz v. Koontz*, 83 Wash. 180, 145 Pac. 201. The statute of frauds is neither pleaded nor discussed. Such agreements, made after marriage and mutually observed, are valid. *Gage v. Gage*, 78 Wash. 262, 138 Pac. 886; *Dobbins v. Dexter Horton & Co.*, 62 Wash. 423, 113 Pac. 1088; *Yake v. Pugh*, 13 Wash. 78, 42 Pac. 528, 52 Am. St. 17.

R. P. Smith testified that he purchased the stock of the warehouse company, ten shares of $10 each par value, with money earned by himself, that his wife was in no manner concerned in the purchase, and that he signed the bond as a stockholder. We are clear that his signing the bond did not create a community obligation. *Way v. Lyric Theater Co.*, 79 Wash. 275, 140 Pac. 320. The court erred in holding the judgment a lien on the community property of R. P. and Janette P. Smith.

II. The giving of the joint notes of the two communities and the two mortgages to raise the original purchase price of the Cartwright land strongly supports the view that an undivided one-half of this land belonged to each of the communities composed of R. P. Smith and Janette P. Smith and Warren Smith and wife. All of these parties, however, testified that the title was taken in the name of Janette P. Smith because the land was purchased for her, and that she paid off all of these obligations from her own funds. But it fairly appears that the money came partly from the crops growing upon the land when it was purchased, partly from money in bank in Warren Smith's name, and about $2,500 from money inherited from her father by Janette P. Smith. It also appears that Warren Smith for many years had rented his mother's lands for half the crops after deducting seed and feed, and that when from time to time these crops were disposed of, the proceeds, both of his part and hers, were deposited in the bank to his credit. There was no evidence that

R. P. Smith contributed anything toward discharging the
obligations created on the purchase of this land. On the
whole, we are satisfied that an undivided one-half of this land
is the property of the community composed of Warren Smith
and wife, and the other half the separate property of Janette
P. Smith, and we so hold. There can be no question that
plaintiff's judgment as against Warren Smith binds the com-
munity property of Warren Smith and wife. It is therefore
a lien on their undivided one-half of this land.

III. For convenience in consecutive discussion, we shall
next consider the "Peasley land." This land was purchased
for $12,000 at an administrator's sale in the spring of 1912.
We are satisfied that it was purchased by Warren Smith for
Janette P. Smith; that, through mistake, the return of sale
was made in his name and that soon afterwards he attempted
to have the mistake corrected, but was told that the easiest
way to correct it was to deed the land to her, his wife join-
ing. Both he and Janette P. Smith so testified, as did also
two attorneys whose advice they took at the time. There is
no evidence to the contrary. Warren Smith had been farm-
ing Janette P. Smith's lands during the years 1908 to 1911,
inclusive, but had paid her no rent since 1907. He borrowed
money at a bank and paid for this land, giving his own check
for something over $8,000 of the purchase price and turning
over two certificates of deposit aggregating about $1,700,
belonging to his mother. So far as can be gathered from
the evidence, the balance of the purchase price, consisting of
a mortgage assumed on the purchase, was paid partly by
crops then growing on the land and partly by Warren from
rent money owing by him to her. While the evidence is much
confused, we are convinced that Warren paid at least $9,000
of the purchase price of this land in part payment of his
debt to his mother. True, she testified to the effect that at
about this time, she does not remember whether before or
after the Peasley purchase, she received a draft for $10,000
from a niece in Michigan who has since died; that she cashed

this draft at some bank in Spokane, but could not remember what bank or where in the city it was located; that she was identified by a "Dutch" woman named "Ella" or "Lena," she is not certain which, who at one time worked for her; that this woman now lives on "some avenue" in Spokane, but she cannot remember where; that she received the money in bills, spent some of it and brought $9,500 home with her in her pocket and gave it to Warren Smith with which to pay for the Peasley land; that this money she inherited from her mother and had been owing to her from her niece thirty-two or thirty-three years. But this is all too vague and indefinite to carry conviction. It must be remembered that all this is supposed to have happened less than three years prior to the time when she testified and is of such nature as to be remembered with certainty and exactness, and that since then she had a settlement with Warren Smith in which it must have been discussed. Moreover, every item of this testimony is of such nature as to be easily corroborated and rendered certain in many ways which at once suggest themselves. On the other hand, certain it is that Warren Smith did not pay for the Peasley land with this money, and certain it is that his bank account shows no such deposit, or any unusual deposit at or near this time. Though he testified that she gave him cash from time to time, he could not remember when nor the amount, and "supposed" he kept some of it around the ranch and put some in the bank. When asked if she gave him $9,500 in cash at any time, he said: "I don't remember. Those things pass on in the common ways of daily life, and I don't remember." Clear and convincing proof of these things lay easily within their power. The evidence adduced seems to us too vague and doubtful to furnish the basis for a legal right. We find that she owns the Peasley land as her separate property, but that at least $9,000 of the purchase price was paid by Warren Smith and should be credited upon his debt to her.

IV. The evidence as to the settlement between Janette P. and Warren Smith as the basis of the mortgages is also lamentably vague and indefinite. Both of them testified, in substance, that they discussed their business matters and concluded that he owed her, for rents and borrowed money, over $20,000. When the loans were made and what their amount, neither could tell. What the amount of grain raised by him on her lands during the five years for which it is claimed she had received nothing, neither could tell. He could not remember whether he had been served with summons in the Bank of Lind suit when the mortgages were given or not, but the evidence shows that he had in fact been served just fourteen days before. She could not remember whether at that time she knew of that suit, but admitted that she knew "a storm was brewing." The attorney in whose office the settlement was made and who witnessed the mortgage and the deed to her of the Peasley land, though he testified as to other matters, did not testify as to this settlement. Two things, however, are reasonably certain. Of this $20,000 debt, $5,000 was paid by the bill of sale of the stock and implements covered by the chattel mortgage, and the $9,500 which Mrs. Smith claims to have given to Warren Smith about the time of the Peasley purchase was included in the $15,000 secured by the real estate mortgage. But the proof, as we have seen, was wholly insufficient to show that she ever turned over to him this $9,500.

Defendants assert that this mortgage was a valid preference. It is settled law in this state that a debtor, though insolvent, may prefer one or more of his *bona fide* creditors even if it exhaust his whole property to do so. *McAvoy v. Jennings*, 44 Wash. 79, 87 Pac. 53; *Vietor v. Glover*, 17 Wash. 37, 48 Pac. 788, 40 L. R. A. 297. Mere knowledge on the preferred creditor's part that his preference will hinder or defeat other creditors will not alone render his preference fraudulent. *Holt Mfg. Co. v. Bennington*, 73 Wash. 467, 132 Pac. 30. But the preferred debt must be

real. It must not be used as a colorable consideration to shield the debtor's property from other claims. *National Surety Co. v. Udd*, 65 Wash. 471, 118 Pac. 347; Bump, Fraudulent Conveyances (4th ed.), § 172.

"The law looks with great jealousy upon the manner of giving preferences, and denounces all departures from good faith, and requires that the parties shall not secure any covert advantage to the debtor in prejudice of his creditors." Bump, Fraudulent Conveyances (4th ed.), § 174.

Though it is usually held that the property transferred must bear a reasonable proportion to the preferred debt (Bump, Fraudulent Conveyances, § 174), excessive security by mortgage raises no conclusive presumption of fraud. It is evidence to be considered with other circumstances in determining fraud. *Grand Island Banking Co. v. Costello*, 45 Neb. 119, 63 N. W. 376. But there is an obvious and marked distinction between an excessive *security* and an exaggerated *debt*. Any security for a sum known to be in excess of what is actually due is presumptively fraudulent. *Kellogg v. Clyne*, 54 Fed. 696; *State ex rel. Redmon v. Durant*, 53 Mo. App. 493. This results as a corollary from the universal rule that the preferred debt must be real to furnish the essential element of good faith.

There are some authorities which hold that such a mortgage is only void as to the fictitious part of the ostensible debt, but the better rule is the other way. If a creditor knowingly takes a mortgage for more than his due, the fraud corrupts the whole. Bump, Fraudulent Conveyances (4th ed.), §§ 485, 486, 487; *Holt v. Creamer*, 34 N. J. Eq. 181; *Heintze v. Bentley*, 34 N. J. Eq. 562; *Whiting v. Johnson*, 11 Serg. & Rawle 328, 14 Am. Dec. 633; *Hall, Moses & Roberts v. Heydon*, 41 Ala. 242; *Russell v. Winne*, 37 N. Y. 591, 97 Am. Dec. 755. When plaintiff showed by the parties to this mortgage that it must have included this $9,500, and brought out circumstances casting the gravest doubt on the existence of so much of the ostensible debt secured, which

doubt if unfounded, in the very nature of the case, defendants easily could have dispelled, but did not, they made their case as against this mortgage. We have no option but to hold it void *in toto* as to plaintiff's judgment. The Warren Smith land is subject to the lien of that judgment.

But the trial court overlooked the fact that plaintiff's assignor had released the lien of this judgment on certain lands of one Offut, another of the judgment debtors, in consideration of an acknowledged payment of $1,250. We can conceive of no reason why this sum, however it was paid, should not be credited on the judgment, and no reason has been suggested.

Cause remanded for modification of the judgment in accordance herewith. Plaintiff may recover its costs on this appeal.

MORRIS, C. J., MOUNT, and BAUSMAN, JJ., concur.