EMMA H. CALDWELL, Appellee, v. ANDREW J. CALDWELL, Executor, Appellant.

**EXECUTORS AND ADMINISTRATORS:** Antenuptial Contract as Barring Allowance. A wife is entitled to an allowance out of her husband's estate for her support for the year following the death of her husband, even though it be made to appear (1) that the wife is a nonresident; (2) that she had not, for some weeks prior to the death of the husband, lived with him; and (3) *that she had by antenuptial contract waived such allowance.*

FAVILLE, J., concurs solely on the ground of *stare decisis.*

*Appeal from Page District Court.*—E. B. WOODRUFF, Judge.

JANUARY 17, 1922.

PROCEEDING in probate, in which Emma H. Caldwell, widow of Alexander Caldwell, deceased, seeks an allowance for support, under the provisions of Code Section 3314. The trial court made an allowance of $1,200, from which order Andrew J. Caldwell, executor of the estate of Alexander Caldwell, deceased, appeals.—*Affirmed.*

*W. E. Mitchell* and *Wilson & Keenan,* for appellant.

*Ferguson, Barnes & Ferguson,* for appellee.

ARTHUR, J.—The Caldwells were residents of San Antonio, Texas. At the time of his death, Alexander Caldwell owned property of considerable value, consisting of real estate, bank stock, moneys, and credits, most of which were located in Page County, Iowa. They were married in 1907, and lived together until shortly before the death of Alexander Caldwell. Alexander Caldwell died at the home of his daughter, Mrs. John Hepsley, in Page County, Iowa, on the 17th day of September, 1920. Outside of a residence property in San Antonio, Texas, the widow had no property. Decedent had been married before, and had a family of grown children. Prior to their marriage, applicant and Alexander Caldwell entered into an antenuptial contract, by the terms of which Emma H. Caldwell, applicant, agreed to accept, in lieu of all interest in the property of Alexander Caldwell, a certain residence property in the town of Essex, Iowa, 10 shares of stock in the Commercial National Bank of Essex, Iowa, and $500 in cash, "which shall be in full of all rights of said party of the second part in and to the estate of said party of the first part whether of allowance for support, exemptions, distributive share, dower or otherwise."

Applicant and decedent lived together until in the summer of 1920. There was always some friction between the children of decedent and the stepmother, widow and applicant herein. In the summer of 1920, trouble arose, and she left their home and went to Clarinda, Page County, Iowa, and instituted a divorce suit against her husband in the Page County district court, charging him with being guilty of cruel and inhuman treatment. The case was on the docket but a few weeks, and never came to trial, and was dismissed a few days before the death of Alexander Caldwell. The widow claims that, when her husband became ill, she dismissed her divorce suit and hastened to his bedside, to effect a reconciliation and to render such service in consolation and comfort as she could, but was not permitted to enter the house where he lay sick, at the home of his daughter. Alexander Caldwell left a will, which was probated, under the terms of which the widow would receive nothing.

Appellant takes the position that applicant, being a non-resident of Iowa, and having by the antenuptial agreement contracted away her right to a widow's allowance, is not entitled

to protection by the courts of this state against her contract; that, as applicant and decedent were nonresidents of the state of Iowa at the time of his death, she is not entitled to any allowance out of the portion of his estate located within the state of Iowa; and that applicant is not entitled to a widow's allowance because she was not living with decedent as a member of his family at the time of his death, and has offered no legal excuse therefor.

We think that the position taken by counsel for appellant, that applicant is not entitled to an allowance because her legal residence was in the state of Texas, is not sound, under our statute. Code Section 3314 makes no distinction between residents and nonresidents. No cases are cited from our court, and we know of none, where the exact question has been considered. By the weight of authority in other jurisdictions, a widow, though a nonresident, is entitled to an allowance for the period of administration. See some of these cases: *Jones v. Cooner,* 142 Ga. 127 (82 S. E. 445); *In re Estate of Lavenberg,* 104 Wash. 515 (177 Pac. 328); *In re Johnson's Estate,* (Wash.) 194 Pac. 834.

It is urged by appellant that the antenuptial contract, containing, as it does, the clause "whether of allowance for support," etc., bars applicant from any right of allowance for support under the statute. It is not clear from the above quoted clause whether the allowance for support mentioned was intended to mean allowance for support during the lifetime of Alexander Caldwell or after his death, if his wife should survive him. But even if it should be interpreted to refer to an allowance under the statute, we think that, under our holdings, the contract would not bar applicant from an allowance under the statute. *In re Estate of Miller,* 143 Iowa 120; *In re Estate of Johnson,* 154 Iowa 118; *In re Estate of Uker,* 154 Iowa 428.

The cause was submitted on affidavits and a little oral testimony given by the executor, appellant. The affidavits offered by appellant are to the effect that appellee left her husband without good cause, and took up her residence in the town of Clarinda, and instituted suit for divorce. The affidavits submitted by appellee are to the effect that they were apart only a few weeks; and that their trouble arose out of the opposition

of his grown-up children to her; and that, when she learned of his serious illness, she dismissed her divorce suit and hastened to his bedside, to effect a reconciliation, and to be of comfort and assistance to him as best she could; but that his daughter, in whose home the husband lay sick, prevented her from so doing,—prevented her from even seeing her husband.

The meager facts and light on the situation disclosed by the affidavits do not enable us to satisfactorily determine whether the separation for a short time of these parties was wholly the fault of applicant, or whether the fault lay with the deceased or his children, or whether more or less blame lay at the door of each. To determine such question would be practically trying a divorce suit between these parties after one of them is dead. We are not disposed to do that. These parties lived together for more than 13 years, and their separation was only for a few weeks preceding his death. We are unable to determine from the record to whom the separation should be charged, and will not assume that it was a permanent separation by desertion of her husband by applicant. The allowance of a year's living to a widow and the amount of the allowance made by the trial court in probate will not be disturbed on appeal, except for abuse of discretion. *Rankin v. Rankin,* 158 Iowa 488; *In re Estate of McClellan,* 187 Iowa 866.

Appellee claims that her husband's estate was of the value of $100,000. Appellant says that it was not worth that much, but does not give the value of the estate. It is likely that the valuation placed upon the estate by appellee is too high. However, we may conclude that decedent left quite a large estate. It is not complained that the allowance was too large, if the widow was entitled to an allowance. The allowance made, as to amount, was not an abuse of discretion.

The proceeding in probate is not triable *de novo,* and a presumption in favor of the findings of the trial court in such matters should be indulged in; and, the record being in the condition in which it is, we think the order of the trial court must be affirmed. *In re Estate of Clark,* 151 Iowa 511.

The judgment of the trial court is affirmed.—*Affirmed.*

STEVENS, C. J., and EVANS, J., concur.

FAVILLE, J., concurs specially.

FAVILLE, J. (concurring.)  I concur in this opinion solely because I think we are bound by our previous holdings, which are of reasonably long standing.  I think that an antenuptial contract of this kind, wherein a woman agrees to make no claim for any allowance in the estate of her prospective husband, is valid, and should be enforced.  Were it not for the rule of *stare decisis*, I would favor a reversal of this case.