[No. 17922.   Department Two.   November 5, 1923.]

*In the Matter of the Estate of* DR. HARRY MARTIN, *Deceased.*[1]

DIVORCE (83)—DISPOSITION OF PROPERTY—CONCLUSIVENESS OF ADJUDICATION—INTERLOCUTORY DECREE—DEATH OF PARTY BEFORE FINAL JUDGMENT. Provisions for the disposition of property being merely incidental to the decree of divorce, an interlocutory decree, which does not dissolve the marriage for a period of six months, is not final as to its provisions for a division of the property, and becomes a nullity on the death of a party before final decree, notwithstanding that Rem. Comp. Stat., § 988, provides that the interlocutory order shall be final as to the custody, management and division of the property and conclusive upon the parties, subject only to the right of appeal, but in no case shall it be considered to have the effect of dissolving the marriage until final judgment is entered.

HUSBAND AND WIFE (103-1)—SEPARATION AGREEMENTS—PERSONAL PROPERTY—EARNINGS AFTER SEPARATION. The husband's earnings become his separate property where the husband and wife in contemplation of separation divided all their property with the intent that each should go his or her own way without further interference.

Appeal from a judgment of the superior court for Island county, Alston, J., entered December 20, 1922, upon findings in favor of the executrix of will, in a contest to determine the right to administer property. Affirmed.

[1]Reported in 219 Pac. 838.

*Robert D. Hamlin,* for appellant.
*Griffin & Griffin,* for respondent.

Fullerton, J.—This is a contest over the right to administer upon the estate of Harry Martin, deceased.

Harry Martin and Dora M. Martin were, at the time of the death of Harry Martin, husband and wife. They had intermarried at Cashmere, in this state, on February 15, 1906. They lived together as husband and wife for a number of years, finally separating sometime in March, 1920. The parties had then accumulated property of considerable value, both real and personal. At the time of the separation, the parties divided their property between them. Mutual deeds were executed and exchanged to evidence the division of the real property, but no formal instrument seems to have been executed as to the personal property. Each of the parties, however, took possession of the part severally awarded, and held it as separate property up to the time of the death of Harry Martin, without let or hindrance by the other.

After the separation, Harry Martin removed to the western part of the state, finally taking up his residence in Oak Harbor, Island county, at which place he was residing at the time of his death. Mrs. Martin maintained her residence at Cashmere; the parties never living together after the separation.

Mr. Martin was a physician and surgeon. After his removal to the coast, he engaged in the practice of his profession. He exchanged a part of his lands at Cashmere for lands at Oak Harbor, and accumulated certain personal property consisting of office furniture and fixtures, household furniture, an automobile, a victrola, and accounts due him for medical services, the whole being appraised at $5,828.68.

In August, 1921, Harry Martin began an action

against Dora M. Martin, seeking a divorce on the ground of desertion. The summons was personally served upon Mrs. Martin at her home in Cashmere, but she made no appearance in the action. After the time for her appearance expired, a default was entered against her, and the cause subsequently heard by the court. At this hearing, the court found that the plaintiff in the action was entitled to a divorce on the ground stated in the complaint, found that all of the property rights of the parties had been equitably and justly settled by mutual agreement, and on October 18, 1921, entered an interlocutory decree to the effect that the plaintiff was entitled to a decree of divorce against the defendant.

Dr. Martin died on March 23, 1922, which was prior to the time the divorce could have been made final under the statute. (Rem. Comp. Stat., § 988-1) [P. C. § 7507a]. The doctor left a non-intervention will, in which he named one Myrtle Smitham as his executrix. The will was proven and admitted to probate, and the executrix named therein confirmed as such. She qualified after the order of confirmation, and took upon herself the administration of the property under the terms of the will. Shortly thereafter, Mrs. Martin applied to be appointed, and was appointed, administratrix of the community property of decedent and herself as the surviving spouse of Dr. Martin. She claimed all of the property of which Dr. Martin died possessed as community property, and sought to have the property turned over to her for administration. This claim the executrix resisted, and the present proceedings were instituted to determine their respective rights. On the hearing, the court determined the property to be the separate property of Dr. Martin, and that the executrix was rightfully in possession thereof. From this holding the administratrix appeals.

On the trial, it developed that there was no contest over the real ·property; the administratrix, through her counsel, conceding that, since the property given in exchange therefor was the separate property of Dr. Martin, the property acquired partook of the same character and was likewise separate property.

The trial court based its conclusion that the personal property was, also, separate property largely on the terms of the interlocutory decree of divorce. It held that, while the decree was not final as a decree of divorce, it was so as a disposition of the property rights of the parties. This conclusion it founded upon the wording of the statute. The statute relied upon, (Rem. Comp. Stat., § 988) [P. C. § 7507], after providing that the court, pending an action for divorce, may make and enforce such orders "for the disposition of the persons, property and children of the parties as may be deemed right and proper," further provides:

"If· it determines that no divorce shall be granted final judgment must thereupon be entered accordingly. If, however, the court determines that either party, or both, is entitled to a divorce an interlocutory order must be entered accordingly, declaring that the party in whose favor the court decides is entitled to a decree of divorce as hereinafter provided; which order shall also make all necessary provisions as to alimony, costs, care, custody, support and education of children and custody, management and division of property, which order as to the custody, management and division of property shall be final and conclusive upon the parties subject only to the right of appeal; but in no case shall such interlocutory order be considered or construed to have the effect of dissolving the marriage of the parties to the action, or of granting a divorce, until final judgment is 'entered: *Provided,* that the court shall, at all times, have the power to grant any and all restraining orders that may be necessary to protect the parties and secure justice. Appeals may be taken from such interlocutory order within ninety days after its entry."

But notwithstanding the support which the wording of this section of the statute seems to lend to the court's conclusion, we can not think the conclusion voices the legislative intent. It is our opinion that the entire order is interlocutory; that, if the interlocutory decree is subsequently made final, all of its provisions then become so; but if, by mutual agreement of the parties to the proceeding, by the death of one of the parties, or for any other cause, the divorce is not made final, the interlocutory decree in its entirety becomes a nullity. It is the general rule, and this court has held [see *Ambrose v. Moore,* 46 Wash. 463, 90 Pac. 588, 11 L. R. A. (N. S.) 103], construing our prior statute which did not provide for an interlocutory decree, that the power to dispose of the property of the husband and wife in a divorce proceeding was a mere incident of the power to grant a divorce, and we think the same rule prevails under the present statute. Being an incident, there can be no disposition of the property of married persons in a divorce action unless the action reaches the stage of an absolute decree.

But we think there is another ground upon which the order of the court can be justified. We think the separation agreement was a final disposition of their property rights. This court has repeatedly held it competent for married persons, where the rights of creditors do not intervene, to divide their personal property and enter into an agreement that thereafter the earnings of each shall be the separate property of each. *Yake v. Pugh,* 13 Wash. 78, 42 Pac. 528, 52 Am. St. 17; *Dobbins v. Dexter Horton & Co.,* 62 Wash. 423, 113 Pac. 1088; *Union Securities Co. v. Smith,* 93 Wash. 115, 160 Pac. 304, Ann. Cas. 1918E 710.

In the last cited case we said:

"1. Both R. P. and Janette P. Smith testified that, during all of their married life, they have conducted

their business separately; that, at the time of the marriage, she had a considerable amount of property inherited from her father; that, at or about that time, it was agreed between them that whatever she acquired should be hers and upon her death should go to her children, and that whatever he acquired and his personal earnings should be his and upon his death should go to his two children by a former marriage. Three disinterested witnesses who had known the Smiths for many years and had transacted business with both of them testified that they had always conducted their business separately. Their sons, Warren Smith and Newell Smith, the former thirty-eight years old, the latter twenty-nine, testified that such had been the case as long as they could remember. This evidence fairly establishes the agreement and shows that, in the main, it had been continuously acted upon. Though this was an oral agreement, it does not appear that it was made before the marriage. It is not assailed as a contract made upon consideration of marriage, hence void because verbal, as we held in *Koontz v. Koontz,* 83 Wash. 180, 145 Pac. 201. The statute of frauds is neither pleaded nor discussed. Such agreements, made after marriage and mutually observed, are valid. *Gage v. Gage,* 78 Wash. 262, 138 Pac. 886; *Dobbins v. Dexter Horton & Co.,* 62 Wash. 423, 113 Pac. 1088; *Yake v. Pugh,* 13 Wash. 78, 42 Pac. 528, 52 Am. St. 17.''

The facts shown in the record justify the conclusion that such was the agreement here. The case is even stronger in favor of the conclusion than is any of the cited cases. In them the agreement was made while the parties were living together as husband and wife, and with the understanding that they would continue to so live together, while here the agreement was made in contemplation of a separation, and with the intent that each should go his or her own way, without further interference by the other.

Our conclusion is that the property in question was the separate property of Dr. Martin, and subject to his disposition by will.

The order appealed from is therefore affirmed.

MAIN, C. J., TOLMAN, PEMBERTON, and PARKER, JJ., concur.