[No. 22678.   Department One.   December 29, 1930.]

*In the Matter of the Estate of* BYRON A. CHISHOLM, *Deceased.*

J. S. ALLEN, *as Administrator, et al., Appellants,* v. IDA M. CHISHOLM, *Respondent.*[1]

*Chas. A. Johnson* and *Chas. T. Borg,* for appellants.
*P. D. Smith* and *F. J. Schaaf,* for respondent.

HOLCOMB, J.—Respondent and decedent intermarried on September 21, 1913, and lived together as husband and wife until the latter part of 1924.   As the issue of that marriage, there is one child, a daughter, who at the time of the trial was about fourteen years

[1]Reported in 294 Pac. 973.

of age, and living with and supported by respondent. Decedent had been married before, and had three children by his former marriage. Respondent and decedent accumulated considerable property, principally consisting of an electric light plant at Twisp, Washington, and also some real estate, all being valued by the parties during the lifetime of decedent at about $12,000.

On February 27, 1925, respondent commenced an action against her husband in the superior court for Okanogan county for a divorce, alleging several valid grounds, and also alleging that her husband had practiced fraud on her to cheat and defraud her out of her just portion of their community property. Afterwards, a property settlement was made between them, and an amended complaint was thereupon filed by respondent in the divorce action, omitting all grounds except that of failure to provide for her and the minor child of the parties. Another allegation was that a settlement of property rights had been reached, as evidenced by a certain memorandum in writing, reading:

"This is to certify that the undersigned, husband and wife, have this day settled and adjusted all our property and property rights, by the parties passing proper deeds and mortgage which represent said settlement, and by the payment by the said Byron A. Chisholm of $550 in addition to his mortgage to Ida M. Chisholm, and the said Ida M. Chisholm hereby waives all right and claim to all property of whatever name and nature and wherever located, in the name of either of the parties hereto, and all accounts and bills receivable; and all property hereafter acquired by either of the parties hereto after the date hereof shall be the sole and separate property of the party acquiring the same.

"Dated this 13th day of March, 1925."

There was a further allegation that respondent believed the total value of the property of the parties

to be about $12,000, and that defendant had agreed to turn over secured notes and money in the sum of $6,000, respondent relinquishing to defendant all her interest in all of the property.

The divorce case was tried on March 27, 1925, and the court made findings of fact and conclusions of law in favor of respondent, finding that defendant had, for more than one year prior to the commencement of the action, failed to make reasonable and suitable provision for the support and maintenance of plaintiff and the family of plaintiff and defendant, and also awarding the custody of the minor child to respondent. On March 28, 1925, the court made and entered an interlocutory decree of divorce in favor of respondent, awarding to her the custody of the minor child, and making the following adjudication as to their property rights:

"It is further ORDERED, ADJUDGED and DECREED that the plaintiff and defendant have no community property and all property of the plaintiff and defendant, both real, personal and mixed and wherever located, is the sole and separate property of the defendant with the exception of a small amount of personal belongings of the plaintiff."

No final decree was ever entered or applied for by either of the parties

Subsequently, a power company, being desirous of extending its service to Twisp, desired also to acquire whatever property and rights decedent held under his franchise. At that time decedent still owed respondent about $5,000 on the property settlement theretofore made. Under certain representations on the part of decedent, he procured a settlement from respondent of the remainder due her for the sum of $2,500. Shortly thereafter he died. He had not paid the monthly payments of $15 per month required by the interlocutory decree for him to pay to respondent to aid in the sup-

port of their minor child, and she filed a claim against his estate for twenty-six months' delinquent payments amounting to the alleged sum of $390 at the time of his death, of which the administrator allowed $280, which she accepted and kept.

While the probate of the estate was proceeding, respondent filed her petition asking that $3,000 be set off to her under the statute as surviving spouse. The heirs of decedent by his former marriage and the administrator filed answers to that petition, averring that respondent was not entitled to the $3,000 under the probate statute because of the property settlement theretofore made.

Appellants urge that respondent is estopped to make the statutory claim of $3,000 allowance from the estate upon the following grounds:

(1)   By the solemn and final property settlement agreement heretofore set out.

(2)   By the interlocutory decree and findings in the divorce action approving the property settlement and agreement.

(3)   By the fact that respondent received and retained all the property awarded her in the settlement and approved by the court, and that she has never offered and does not now offer to restore the *status quo* of the parties.

(4)   By her conduct, including the filing of a claim for alimony against the estate, by which she has always treated the settlement and decree in the divorce action as a final settlement of property rights.

A number of cases are cited by appellants in support of their contentions, which are generally inapt because they do not involve statutes respecting incomplete divorces such as ours, or statutes providing for allowances in probate to the surviving spouse out of any property of the estate, either community or separ-

ate, not exceeding the value of $3,000, exclusive of incumbrances, where no homestead had been claimed by either party. Rem. Comp. Stat., § 1473.

Our statute on divorce, Rem. Comp. Stat., § 988-1, provides that:

"At any time after six months have expired, after the entry of such interlocutory order, and upon the conclusion of an appeal, if taken therefrom, the court, on motion of either party, shall confirm such order and enter a final judgment granting an absolute divorce, from which no appeal shall lie."

No final decree of divorce having been entered, the marital relation had not been severed. *State ex rel. Hamlin v. Superior Court*, 148 Wash. 113, 268 Pac. 159, *Reed v. Reed*, 149 Wash. 352, 270 Pac. 1028, *In re Boeson's Estate*, 201 Cal. 36, 255 Pac. 800.

In California there is also a statute similar to ours providing for widow's allowance. In a case where an interlocutory divorce decree had been entered in which it was ordered that all other property of the community, real, personal, or mixed and of every description (after a part of the decree transferring certain other property to the wife) was assigned and allotted to the husband free and clear of all claim of the wife, after the death of the husband the wife made application to the proper court for a family allowance. The application was resisted on the ground that she had not for many years been a member of the family of the deceased, and that deceased died possessed of no property except that which had formerly been the property of the community, which had been awarded to him free and clear of all claim of the wife, including, as was contended, her claim for family allowance.

In determining the matter, the court, among other things, said:

"When a person dies leaving a widow, under section 1464 of the Code of Civil Procedure, such widow is

entitled to a reasonable provision for her support to be allowed by the superior court or a judge thereof. This provision is not conditioned upon her having lived in a family relation with her husband at the time of his death. It follows, therefore, that the right of Nettie Gould to a family allowance must be determined independently of the circumstance that she has not lived with Frank H. Gould for some years prior to his decease. . . .

"At the time of the death of the decedent, Nettie Gould was his wife. She is now entitled to such rights as the law confers upon her, under the circumstances, as his widow, including the right to a family allowance, unless the property of the community awarded to the decedent was allotted to him free and clear of all claim by her, including the claim to a family allowance. . . ."

A former case was then quoted approvingly as follows:

" 'The widow's claim to a family allowance is strongly favored in our law. . . . A will may, of course, be so drawn as to put the widow to her election between taking the benefits given her by the testator and claiming her right of family allowance. So, too, the wife may, by agreement, surrender the privilege of applying for an allowance. Whether the right to demand an allowance is inconsistent with the will, or has been surrendered, is a question of interpretation of the will or the contract. In the case of a contract, we think the right should not be held to have been surrendered by an agreement between the spouses "except by clear and explicit language." '

"In reason, the same principle should apply in construing the decree of a court dividing the property of the community between the spouses; the additional precaution being taken to avoid construing the decree so as to make it apply to rights which the proceeding was not intended to adjudicate. . . . An examination of the cases wherein it has been held that the wife had waived her statutory rights as widow reveals the fact that in each case the words used clearly im-

ported an intention to surrender the very right afterwards claimed." (Citing cases.) *In re Gould's Estate,* 181 Cal. 11, 183 Pac. 146.

In the case of *In re Boeson's Estate, supra,* the California supreme court, upon the contract set out in that case, held that a family allowance in favor of the surviving widow had been specifically waived, because the property settlement contract contained these words:

" . . . and that said parties herein waive any and all right to the estate or any interest in the estate of the other for a family allowance, or by way of inheritance. . . ."

In *In re Breitter's Estate,* 69 Cal. App. 424, 231 Pac. 351, that court held, following the *Gould* case, *supra,* that the widow, although separated from decedent at the time of his death, was entitled to a family allowance for her and her minor son, where separation was caused by the husband's cruelty, through no fault of hers, and constituted a sufficient ground for divorce.

Colorado also has a statute providing for widow's allowance out of the estate of a deceased husband, and the supreme court of that state has uniformly held that the widow's allowance is not an interest in the estate of her deceased husband, but a charge against it and a part of the costs of the administration; that it is a right that cannot be waived by presumption, assumption or construction. *Remington v. Remington,* 72 Colo. 132, 209 Pac. 802.

In *Deeble v. Alerton,* 58 Colo. 166, 143 Pac. 1096, where a husband and wife had executed a special agreement providing that neither should have nor claim any part of the other's estate, but containing no plain provision that the wife waived her widow's allowance in case of the husband's death, there was no waiver and the separation agreement was no bar

to its allowance. It was there also held that a widow's allowance of her deceased husband's estate is not a distributive part of the estate, but part of the costs of the administration. In that case, also, the separation agreement, among other things, contained the provisions that:

". . . neither party shall or will at any time hereafter claim or demand from the other any money, . . . stock in trade or any property whatever, which either now hath or may hereafter procure, or which may be devised or otherwise acquired by either;"

and

"That each shall from and after this agreement pursue their own course and business as though not married and that neither shall be liable for the support or maintenance or debts of the other."

It is obvious that the property settlement in that case was almost identical in terms with that in the case at bar, and the confirmation of the property settlement by the trial court in this case made it no stronger.

In Iowa, also, is a case involving an antenuptial agreement fixing the status of all the property of the husband after marriage and where the wife was living separate from the husband at the time of his death, there being a statute in Iowa giving the widow a right to an allowance for the period of administration, in which it was held that, notwithstanding the antenuptial agreement between the parties and her living separate from her husband at the time of his death, she was entitled to the allowance out of the estate. *Caldwell v. Caldwell,* 192 Iowa 1157, 186 N. W. 58.

We have also held that allowance to the surviving spouse under our statute is not, strictly speaking, under homestead or exemption laws. *In re Laven-*

*berg's Estate,* 104 Wash. 515, 177 Pac. 328. That case was followed in *In re Johnson's Estate,* 114 Wash. 61, 194 Pac. 834, and in *In re Pompal's Estate,* 150 Wash. 242, 272 Pac. 980.

In all three of our cited cases, the widow was not living with the husband at the time of his death. In *In re Pompal's Estate, supra,* it was said:

"Living separate and apart, it will be noted, is not a statutory disqualification."

Under the foregoing authorities, we consider that respondent in this case was entitled to the allowance, unless she is estopped by having filed her claim in probate for the twenty-six months' payments of $15 each, which had been awarded her under the interlocutory decree and which had never been paid, and receiving and accepting $280 allowed by the administrator. As to that matter, there is nothing inconsistent, in our view, in her being both a creditor and a claimant for allowance as surviving widow. The moral and legal duty rested upon decedent, as well as by the solemn adjudication of a court of competent jurisdiction, to support his family and to make provision for them upon being divorced. This he failed to do. Those claims were legitimate charges against his estate. The widow's allowance was an additional right under the statute in favor of the widow and child. As was said by the supreme court of Colorado, it constituted no interest in the estate of the decedent.

The judgment was right, and it is affirmed.

MITCHELL, C. J., TOLMAN, PARKER, and MAIN, JJ., concur.