[No. 30245.    *En Banc.*    February 25, 1948.]

KATY TOGLIATTI, *Respondent,* v. LULU MORELLO ROBERTSON, *Individually and as Administratrix, Appellant.*[1]

[1]Reported in 190 P. (2d) 575.

*Stanley Seddon*, for appellant.

*Geo. E. Canfield* and *Edgar H. Canfield*, for respondent.

SCHWELLENBACH, J.—This is an appeal from a judgment awarding certain United States savings bonds (purchased by the deceased, John Morello) to the plaintiff, and decreeing that neither of the defendants owned any interest therein.

The facts were stipulated between the parties at the time of trial. John and Lulu Morello were married January 17, 1918, in Montana. Later they moved to Washington, living in Cle Elum until they separated in 1928. On July 14, 1928, after due proceedings regularly had, Lulu Morello obtained an interlocutory decree of divorce from her husband, John. No final decree of divorce was ever entered, but subsequent to the interlocutory decree the parties never resumed marital relations.

From that time on, the parties lived wholly separate and apart. Neither thereafter contributed to the support of the other, or otherwise accounted to the other for any income received, and neither asserted any claims to any subsequent property accumulated by the other during his lifetime, and each managed his individual business and affairs free from any interference or direction by the other during this time.

On September 12, 1929, after in good faith obtaining a marriage license, Lulu Morello and Olaf Robertson went through a marriage ceremony and thereafter lived together as husband and wife.

In the month of June, 1944, John Morello purchased, with earnings acquired subsequent to the entry of the interlocutory decree, the four United States savings bonds involved in this action. The bonds were inscribed and made payable in the alternative to "Mr. John Morello or Miss Katy Togliatti."

John Morello died intestate in Cle Elum July 26, 1946. In August, 1946, Lulu Morello and Olaf Robertson secured a marriage license and went through a second ceremony of marriage. On September 3, 1946, Lulu Morello Robertson was appointed, and qualified as, the administratrix of the estate of John Morello, deceased.

Respondent claims title to the bonds by virtue of the fact that she is named co-owner, under the provisions of § 315.-32(c) of the United States treasury department regulations governing United States savings bonds, department circular No. 530, reading as follows:

"If either coowner dies without having presented and surrendered the bond for payment to a Federal Reserve Bank or the Treasury Department, the surviving coowner will be recognized as the sole and absolute owner of the bond, and payment will be made only to him." 9 Fed. Register 4787, part 4.

And also by virtue of § 1, chapter 14, p. 19, Laws of 1943 (Rem. Supp. 1943, § 11548-60 [P.P.C. § 200j-1]).

Appellant, Lulu Morello Robertson, claims title by virtue of the fact that the marriage between herself and John Morello had never been legally dissolved; that she is his widow; that the bonds are community property; and that the husband had no right to give community property away.

Rem. Rev. Stat. (Sup.), § 988 [P.P.C. § 23-15], provides that if, after hearing, the court determines that either party to a divorce action, or both, is entitled to a divorce, an interlocutory order must be entered accordingly. Rem. Rev. Stat., § 988-1 [P.P.C. § 23-17], provides for the confirmation of such an order and the entry of a final decree of divorce, to be made upon the motion of either party, which may be done at any time after six months shall have expired after the entry of the interlocutory order, and upon the conclusion of an appeal, if taken therefrom.

We have held that, where one of the parties to a divorce action dies before the entry of the final decree, the action abates, and the interlocutory order, in its entirety, becomes a nullity. *State ex rel. Atkins v. Superior Court,*

1 Wn. (2d) 677, 97 P. (2d) 139; *Dougherty v. Dougherty,* 24 Wn. (2d) 811, 167 P. (2d) 467.

Upon the death of John Morello, therefore, no final decree having been entered, the interlocutory order entered in the case of Lulu Morello v. John Morello on July 14, 1928, became a nullity, and Lulu Morello became his widow and his heir, entitled to any property of which he died seized. She became entitled, as his surviving spouse, to file a petition in his estate for the statutory allowance in lieu of homestead. *In re Chisholm's Estate,* 159 Wash. 674, 294 Pac. 973, 76 A. L. R. 279.

If these savings bonds were his separate property, he did not die seized of them. They passed to Katy Togliatti, the surviving co-owner, upon his death. On the other hand, if the bonds were purchased with community funds, he had no right to make a gift of them by naming Katy Togliatti co-owner, and the bonds would be inherited by his widow.

Rem. Rev. Stat., § 6890 [P.P.C. § 434-25], provides:

"Property and pecuniary rights owned by the husband before marriage, and that acquired by him afterward by gift, bequest, devise or descent, with the rents, issues, and profits thereof, shall not be subject to the debts or contracts of his wife, and he may manage, lease, sell, convey, encumber, or devise, by will, such property without the wife joining in such management, alienation, or encumbrance, as fully and to the same effect as though he were unmarried."

Rem. Rev. Stat., § 6891, provides:

"The property and pecuniary rights of every married woman at the time of her marriage, or afterward acquired by gift, devise, or inheritance, with the rents, issues, and profits thereof, shall not be subject to the debts or contracts of her husband, and she may manage, lease, sell, convey, encumber or devise by will such property, to the same extent and in the same manner that her husband can, property belonging to him."

Rem. Rev. Stat., § 6892 [P.P.C. § 434-27], provides:

"Property, not acquired or owned as prescribed in the next two preceding sections, acquired after marriage by

either husband or wife, or both, is community property. The husband shall have the management and control of community personal property, with a like power of disposition as he has of his separate personal property, except he shall not devise by will more than one-half thereof."

We have been unable to find any case in which this precise question has been presented. In *In re Witte's Estate*, 21 Wn. (2d) 112, 150 P. (2d) 595, we laid down the following rules:

"Property and pecuniary rights owned by either husband or wife before marriage or acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, are his or her separate property; and all other property acquired after marriage by either spouse is community property. Rem. Rev. Stat., §§ 6890, 6891, 6892 [P. C. §§ 1432, 1424, 1433]. . . .

"The status of property, whether real or personal, is to be determined as of the date of its acquisition. . . .

"The status of property, when once fixed, remains so in character until changed by deed, by agreement of the parties, by operation of law, or by the working of some form of estoppel."

In *Wampler v. Beinert*, 125 Wash. 494, 216 Pac. 855, an action for damages because of personal injuries incurred by the wife, we held that the husband, having abandoned the wife, did not have authority, as the manager of the community, to enter into a settlement and a release of the claim for damages. We said:

"While a husband, under § 6892, Rem. Comp. Stat. [P. C. § 1433], has the management and control of the community property and is a necessary party plaintiff in an action to recover damages resulting from injury to the wife, he ceases to be a necessary party and has no authority to release or discharge such claim, if in fact the wife is living separate and apart from her husband, caused by the desertion of the husband. By repudiating his duties the husband releases his authority, and after the husband abandons his wife and they are living separate and apart, his authority over a claim for injuries to the wife is not reestablished by the husband merely returning to the community wherein the wife resides, and his lack of authority will continue until he does in good faith resume the duties and obligations of a husband toward the wife."

In *Yates v. Dohring*, 24 Wn. (2d) 877, 168 P. (2d) 404, the husband and wife had separated, and the wife sued for divorce. An order of default had been entered, but there had been no entry of an interlocutory decree. We held that the husband was not liable for the charges for the wife's board and room, incurred subsequent to the separation, saying:

"Where a spouse, by words or conduct, evidences an intention not to maintain the marriage state in its family aspects and disavows all marital obligations, the other is freed from the liabilities incident to the marital status, which are based upon the reciprocal aspects of the relationship. The old and familiar notice given to the public by a spouse that the other had left his bed and board without cause and that he will not be responsible for debts contracted hereafter by the other, is not an unfair statement of the rights of a spouse in that situation and the reason for it. One who stands ready and willing to discharge one's marital obligations in full, will not have one's rights extinguished by the acts of the other. But one who voluntarily absents oneself from the household with the intention of disavowing one's marital obligations, forfeits the right to family support provided for by the statute."

In *Lanigan v. Miles*, 102 Wash. 82, 172 Pac. 894, we said:

"Reference to the opinions of this court will show that we have built up two lines of decisions covering the right of one or the other of married persons to assert a separate interest in property. In the one line, the court has had to do with the claims of creditors or the interests of third persons having some tangible equity in or lien upon the property sought to be recovered or levied upon. In the other line, the court has had to deal with husband and wife as free contracting agents, unhampered and unhindered by the claims of creditors or by any one having direct interest in, or lien upon, the property. In all of the first line of cases, the court has had to deal with circumstances which, if unexplained by testimony at once clear and convincing, would amount to badges of fraud. In the second line of cases, it appears that a husband and wife may freely contract, or give one to the other, and thus provide for the holding of property then or thereafter to be acquired as a separate estate.

"To make ourselves clear, if the property herein involved had stood in the name of Thomas W. Miles, and he had been the active agent in the care, management, and disposition of it during his lifetime, his widow, or any one claiming under her, would be put to a greater burden than a mere preponderance of the testimony, if it were claimed that the property was her separate property, for the husband's conduct with reference to the property would have been consistent with the usual practice, and not inconsistent with the ordinary methods of management of community property, funds, or business. But where a course of of dealing between spouses, and this running over a period of from thirty to fifty years, is consistent—is not only consistent with, but confirmatory of the claim of the one who asserts a separate estate—we see no reason for saying that the presumption that all property acquired after marriage is community property is not overcome, at least, to the extent of putting a burden on the one who asserts the contrary. . . .

" 'It is true that, if we look in this evidence for some such specific agreement at some specific time, we may not be able to find it in clear and formal language; but taking her testimony as to the general understanding between herself and husband, in contradiction of which there is not a syllable of evidence, and the fact of the management of her earnings and the property acquired thereby without the slightest control of or interference by her husband, we cannot escape the conclusion that it was at all times since their marriage well understood by both of them that her earnings were to be her separate property.' *Dobbins v. Dexter Horton & Co.*, 62 Wash. 423, 113 Pac. 1088."

In *In re Martin's Estate*, 127 Wash. 44, 219 Pac. 838, Dr. Martin and his wife were married in 1906 and lived together as husband and wife at Cashmere until they separated in 1920. By that time they had accumulated property of considerable value, both real and personal. At the time of the separation, the parties divided their property between them. Mutual deeds were executed and exchanged to evidence the division of the real property, but no formal instrument seems to have been executed as to the personal property. Each of the parties, however, took possession of the part severally awarded, and held it as separate prop-

erty up to the time of the death of Dr. Martin, without let or hindrance of the other.

After the separation, Dr. Martin moved to the western part of the state, Mrs. Martin remaining in Cashmere. After moving to the coast, Dr. Martin accumulated personal property, which was appraised at $5,828.68.

In August, 1921, Dr. Martin commenced an action for divorce. The interlocutory order was entered October 18, 1921. He died March 23, 1922, which was prior to the time the divorce could have been made final under the statute. He left a nonintervention will, which was admitted to probate. Mrs. Martin applied and was appointed administratrix of the community estate. She claimed all of the property of which Dr. Martin died possessed as community property. This contention was resisted by the executrix. At the trial, the widow conceded the real property was the separate property of Dr. Martin. The trial court found that the personal property was, also, separate property. On appeal, we held:

"We think the separation agreement was a final disposition of their property rights. This court has repeatedly held it competent for married persons, where the rights of creditors do not intervene, to divide their personal property and enter into an agreement that thereafter the earnings of each shall be the separate property of each. *Yake v. Pugh,* 13 Wash. 78, 42 Pac. 528, 52 Am. St. 17; *Dobbins v. Dexter Horton & Co.,* 62 Wash. 423, 113 Pac. 1088; *Union Securities Co. v. Smith,* 93 Wash. 115, 160 Pac. 304, Ann. Cas. 1918E 710. . . .

"The facts shown in the record justify the conclusion that such was the agreement here. The case is even stronger in favor of the conclusion than is any of the cited cases. In them the agreement was made while the parties were living together as husband and wife, and with the understanding that they would continue to so live together, while here the agreement was made in contemplation of a separation, and with the intent that each should go his or her own way, without further interference by the other."

▮▮ It must be remembered that in this case we are not concerned with the status of the parties. No final decree having been entered, they remained husband and wife.

We are concerned only with the status of the property. The whole theory of community property is that it is obtained by the efforts of the husband or wife, or both, for the benefit of the community.

Here, from the entry of the interlocutory decree, the parties lived separate and apart. Neither, thereafter, contributed to the support of the other, or otherwise accounted to the other for any income received by either of them, and neither asserted any claims to any subsequent property accumulated by the other during his lifetime, and each managed his individual business and affairs free from any interference or direction by the other during this time. One year after the entry of the interlocutory order, the wife, in good faith, went through a marriage ceremony with Mr. Robertson, and they lived, thereafter, together as husband and wife.

True, there was no formal agreement between these parties making any subsequently acquired property the separate property of each. But for eighteen years each went his separate way. By their conduct during these years, they recognized the separate ownership of all property thereafter accumulated by either of them.

Each case must be disposed of on its own peculiar facts. As to this case, we have no hesitancy in saying that the bonds were purchased with his separate funds by Mr. Morello in 1944, and therefore were his separate property.

The judgment is affirmed.

STEINERT, ROBINSON, and JEFFERS, JJ., concur.

MALLERY, C. J. (concurring)—Property takes its status as of the time it is acquired, and it so continues until and unless a change *becomes effective.*

Thus property acquired during coverture is community property. In our cases, where an interlocutory order, which by its terms changed the property concerned from community to the separate property of the parties, came to nothing by reason of a reconciliation or the death of a party, we have held that the property had the same status as it had when it was acquired. This was because the in-

terlocutory order became ineffective and therefore left the property in its original status. Of course, only property existing prior to the interlocutory order was under consideration in those cases, with one exception which I shall mention later.

In the instant case, we have a different factual situation. Here there is no property involved that was acquired prior to the interlocutory order, as in those cases. On the contrary, it was acquired after the interlocutory order was entered. No final decree was ever entered. The status of the property, therefore, was not passed upon by the court. It therefore takes its status, as does all property not disposed of by a court, as of the time it was acquired. The question is: What is the status of the earnings of a party to a divorce action after the entry of the interlocutory order?

Divorce being a statutory action, the intention of the legislature must be drawn from the language of the pertinent statutes in question. I think it is determined by the requirement of the statute that the property of the spouses be divided by the interlocutory order, which alone is made appealable. The statute makes the final decree confirmatory only. Thus the plenary powers invoked by the action must be exercised by the court in its interlocutory order if it is to be exercised at all. Its powers as to the disposal of property being exhausted in the appealable interlocutory order, no power remains thereafter but that of confirmation. I think the logic of this situation compels the conclusion that the legislature intended the earnings of parties subsequent to the interlocutory order to be their separate property. Otherwise it would not have made it impossible for the court to divide such property.

If this reasoning be sound, the instant case must be affirmed.

*California-Western States Life Ins. Co. v. Jarman, ante* p. 98, 185 P. (2d) 494, is the only case in point on this question. It holds that earnings after the entry of an interlocutory order are community property. The opinion in that case does not cite in its support any case involving

any such earnings acquired subsequent to the entry of an interlocutory order of divorce. Indeed, there are none such to cite. The bench and bar have universally treated such earnings as separate property. Not to overrule the *Jarman* case, will put members of the bar in a quandary as to their duty to their clients regarding their earnings subsequent to the interlocutory order. This confusion can be avoided only by overruling the *Jarman* case. We should do so now, before further injustice flows from it.

HILL and BEALS, JJ., concur with MALLERY, C. J.

MILLARD, J. (dissenting)—In effect, the majority opinion holds that appellant is estopped from prosecuting this action by reason of conduct. The answer to the claim of estoppel is not that the estoppel *does not* exist, but that it *cannot* exist. There can be no divorce by estoppel. The contract of marriage is one which may not be dissolved other than as prescribed by the statute. An interlocutory order of divorce does not have the effect of dissolving the marriage of the parties until final judgment is entered. Rem. Rev. Stat. (Sup.), § 988.

Where an investment is made by the husband during coverture, if not made with funds obtained prior to his marriage, or if not made with property or money acquired by him after marriage, by gift, devise, or inheritance, such investment is community property. Rem. Rev. Stat., § 6892; *In re Brown's Estate*, 124 Wash. 273, 214 Pac. 10.

"All property, with certain exceptions not pertinent here, acquired after marriage by either husband or wife, or both, is community property. Our community property system conclusively determines that everything that is produced by either spouse, whether it be by toil or talent, is earned by the community and belongs to the community. It is true that the husband is the manager of the community property, but as such he acts as trustee for the community and cannot use community property of any kind for any purpose except for the good of the community." *Small v. Bartyzel*, 27 Wn. (2d) 176, 180, 177 P. (2d) 391.

An interlocutory order of divorce abates on death of either party, and becomes a nullity in its entirety. *McPherson v. McPherson*, 200 Wash. 365, 93 P. (2d) 428;

*Dougherty v. Dougherty,* 24 Wn. (2d) 811, 167 P. (2d) 467; 21 Wash. L. Rev. 178.

In *Dougherty v. Dougherty, supra,* the wife sued for divorce and prayed that certain property be awarded to her for the reason that it was her separate property. Her husband, by cross-complaint, prayed for a divorce and alleged that the property was community property. The trial court found the property to be the wife's separate property and awarded it to her. The husband appealed. Pending the appeal, the wife died, and, on motion of the husband, we dismissed the appeal on the ground that the interlocutory order became a nullity in its entirety on the death of the wife, and, as the status of the property involved was fixed in the interlocutory order, the award to the wife would not stand.

We are committed to the rule that, during the term of an interlocutory order of divorce, the marital relationship exists in law, as well as in practical effect, and that an interlocutory order of divorce abates and becomes a nullity for all purposes on the death of one of the parties prior to the entry of the final decree.

The right of appellant wife to the property involved in this action was in no way changed by the entry of the interlocutory order in the divorce proceeding, for the reason that the marital status did not change. See *California-Western States Life Ins. Co. v. Jarman, ante* p. 98, 185 P. (2d) 494.

The majority opinion disregards the community property law of this state and overrules many of our opinions, a few of which are cited as follows:

*In re Brown's Estate,* 124 Wash. 273, 214 Pac. 10; *In re Martin's Estate,* 127 Wash. 44, 219 Pac. 838; *In re Coffey's Estate,* 195 Wash. 379, 81 P. (2d) 283; *Lavigne v. Hughes,* 199 Wash. 285, 91 P. (2d) 560; *McPerson v. McPherson,* 200 Wash. 365, 93 P. (2d) 428; *In re Towey's Estate,* 22 Wn. (2d) 212, 155 P. (2d) 273; *Small v. Bartyzel,* 27 Wn. (2d) 176, 177 P. (2d) 391; *Crockett v. Crockett,* 27 Wn. (2d)

877, 181 P. (2d) 180; and *California-Western States Life Ins. Co. v. Jarman, ante* p. 98, 185 P. (2d) 494.

The judgment should be reversed.

SIMPSON, J. (dissenting)—I am unable to agree with my fellow judges who have signed the majority and concurring opinions. Much could be written to prove that the two opinions are contrary to the whole theory of community property. However, it would serve no useful purpose to write such a dissent. I will content myself with giving in a few words my reasons for disagreement.

The community property system was unknown to the common law and is, in this state, purely a creature of statute, so we must go to the statutes as passed by the legislature in order to ascertain the meaning of laws relating to community property.

It must be admitted that if the money earned by John Morello was community property, he could not use it for the purpose of purchasing property for another individual. This rule has definitely been decided by this court in *Occidental Life Ins. Co. v. Powers,* 192 Wash. 475, 74 P. (2d) 27, 114 A. L. R. 531; *Hanley v. Most,* 9 Wn. (2d) 429, 115 P. (2d) 933; and *King v. Prudential Ins. Co.,* 13 Wn. (2d) 414, 125 P. (2d) 282. The status of real or personal property, whether separate or community, is to be determined as of the date of its acquisition. *State ex rel. Van Moss v. Sailors,* 180 Wash. 269, 39 P. (2d) 397.

Rem. Rev. Stat., §§ 6890, 6891, and 6892, define community property as being property *acquired after marriage* by either husband or wife, or both, except property acquired by gift, bequest, devise, or descent. The one exception to this rule is contained in Rem. Rev. Stat., § 6896 [P.P.C. § 434-35], which says that:

"The earnings and accumulations of the wife and of her minor children living with her, or in her custody while she is living separate from her husband, are the separate property of the wife."

The interlocutory order of divorce granted in this case has no force or effect whatever in determining the char-

acter or status of the property indicated by the bonds in controversy here. The section of the code which provides for the granting of interlocutory orders provides in part:

"In no case shall such interlocutory order be considered or construed to have the effect of dissolving the marriage of the parties to the action, or of granting a divorce until final judgment is entered." Rem. Rev. Stat. (Sup.), § 988.

An interlocutory order becomes a nullity in its entirety in those cases where one of the parties to the action dies prior to the entry of a final decree. *In re Madden's Estate,* 176 Wash. 51, 28 P. (2d) 280; *McPherson v. McPherson,* 200 Wash. 365, 93 P. (2d) 428; *State ex rel. Atkins v. Superior Court,* 1 Wn. (2d) 677, 97 P. (2d) 139; and *In re Garrity's Estate,* 22 Wn. (2d) 391, 156 P. (2d) 217.

The statutes are clear and give the evident purpose of the legislature in enacting them. There is no room for construction of these statutes defining community property. They speak for themselves in no uncertain language. The opinions in this case simply add provisions to the acts of the legislature by saying that property acquired by the husband and wife after marriage is community property, unless they cease to live together as husband and wife for a considerable period of time. That is judicial legislation.

A question comes to my mind as to how this opinion shall be applied to other facts which have to do with people who are husband and wife who are not living together. How long must they live separate and apart before the property acquired by the husband ceases to be community property? Will it be one year? Two years? Five years? Ten years? Or a longer period of time? Or does the court intend to hold that any separation of husband and wife for any time shall bring about the result obtained by the majority opinion in this case?

To my mind, the case presents no intricate questions. All the court should do is to follow the simple injunction of the statute, which is to the effect that *all property acquired by husband or wife, or both, after marriage, is community property.*

March 31, 1948. Petition for rehearing denied.