[No. 30-40479-2.    Division Two.    November 13, 1969.]

*In the Matter of the Estate of* FRANK J. OSICKA, *Deceased.*
OLGA ETHERIDGE, *as Executrix, Appellant,* v. MARY
OSICKA, *Respondent.*

*Murray, Armstrong & Vander Stoep* and *James S. Turner,* for appellant.

*Campbell & Hall* and *Lee J. Campbell,* for respondent.

ARMSTRONG, C. J.—Appellant Olga Etheridge, as executrix of the last will and testament of Frank J. Osicka, appeals from an order setting aside the estate property in lieu of homestead to the respondent intervenor Mary Osicka. Respondent had intervened in the administration of the estate petitioning for the award as surviving spouse of Frank J. Osicka.

The case was presented to the court on stipulated facts. The sole issue in the case is whether the property in the estate was separate or community property. If it is separate property of the deceased, the award in lieu of homestead cannot be made. If the property, or any portion of it, is community property, Mary Osicka is entitled to the award in lieu of homestead.

Frank J. Osicka and Mary Osicka were married in Illinois on September 10, 1910. They lived together in Wisconsin, Michigan, and Illinois, but never lived together in the state of Washington.

On May 8, 1945, the parties entered into a separation agreement in the state of Illinois which stated that "Mary L. Osicka is ill and feels that it is to her best interest to remain separate and apart, and to live separate and apart from her husband, Frank J. Osicka." Her husband acknowledged that she was ill and stated that he considered it to their best interest to live separate and apart. The agreement provided for payment of $300 for her living and medical expenses and additional sums if necessary if this was not adequate for her support and medical expenses until March 1, 1946. No later than March 1, 1946, the husband would dispose of personal property located on their farm and divide the net proceeds of all their property between the parties. The wife agreed to accept the payments and take no action for separate maintenance if the husband carried out the agreement.

On February 23, 1946, the parties entered into another agreement which stated in part: "Whereas the parties hereto did on the 8th day of May, 1945, enter into a certain agreement with reference to the division of all of their property equally between them." The agreement thereafter acknowledged payment to the wife of $300 in cash and $212.87 received from the sale of poultry. It stated that the husband had sold all his farm personal property and had that date paid her $3,773.49, representing additional living expenses during the period of their separation, one-half the present bank account, and one-half the net proceeds of the sale. The agreement thereafter stated:

It is AGREED as follows:

1. Mary L. Osicka accepts receipt of said sum of $3773.49 and accepts the same in full payment, release and discharge of all claims that she may have against the said Frank J. Osicka under the terms of the above mentioned agreement and in full release and discharge of all future support or alimony that she might be entitled to

recover from the said Frank J. Osicka. She further agrees that in the event either party hereto should file a complaint either for divorce or separate maintenance that the fund herein above mentioned is accepted by her in lieu of any alimony or support money that might be granted her by any court in such proceedings.

2. Frank J. Osicka hereby releases and discharges the said Mary L. Osicka from any support money or alimony to which he might be entitled from her in the same manner and to the same extent as she has released him under the terms of the preceding paragraph.

Finding of fact No. 3 states:

That during the lifetime of the said Frank J. Osicka, he and the petitioner, his wife, did enter into a written agreement to live separate and apart, and that pursuant to said agreement, they did, in effect, divide their property.

The stipulated facts state:

From and after the 8th day of May, 1945, pursuant to agreement of the aforesaid parties, each of the aforesaid parties lived *permanently separate and apart* from the other.

(Italics ours.) No action for divorce was ever commenced by either party.

■ The real estate inventoried in the probate was purchased by the husband for $3,800 on July 26, 1954. The 1955 Nash was acquired no earlier than the fall of 1954. There is no evidence of the source of the funds used for the purchases. The character of ownership of property as community or separate is determined at the time of its acquisition. *In re Estate of Witte,* 21 Wn.2d 112, 150 P.2d 595 (1944).

On February 25, 1965, the husband, then 78 years of age, died testate. His last will and testament provides in part:

SECOND: I make no provision whatever in this my Last Will and Testament for my wife, Mary Osicka, from whom I have not been divorced, as she, in the year 1946, entered into a formal agreement in writing releasing me from any and all obligation to her, and dividing our property at that time.

. . .

FOURTH: After the payment of my funeral expenses, the expenses of my last sickness and the expenses of administration of my estate, and such debts as my estate may be legally obligated to pay, I give, devise and bequeath unto my granddaughter, Karen Etheridge, now of 2718 Ewing Ave, Evanston, Illinois, all the rest and residue of my estate, of whatever character, wherever located, including after acquired property.

On February 28, 1966, a petition was filed and served by the wife seeking an order setting aside the estate property in lieu of homestead. The petition alleges that all the property of the estate is community property. On April 21, 1966, the executrix of the estate of Frank J. Osicka answered that all the property of the estate is the separate property of the deceased.

The parties agreed that if the property is found to be separate property of the deceased husband, the petition of the wife should be dismissed; and if the property or any portion of it should be found to be community property of the husband and wife, the petition should be granted by reason of the language in RCW 11.52.016 which provides:

The awards provided for in RCW 11.52.010 through 11.52.024 [awards in lieu of homestead] shall not be taken from separate property of the deceased which is otherwise disposed of by will.

The statutes relating to community property generally provide that each spouse owns separately all property owned at the time of marriage, any property thereafter acquired gratuitously, and the rents, issues, and profits of separate property. RCW 26.16.010 and RCW 26.16.020. Property acquired after marriage in a manner not specified in those statutes is community property. RCW 26.16.030. RCW 26.16.140 provides that the earnings and accumulations of the wife, while she is living separate and apart from the husband, are the separate property of the wife. There is no statute relating to the earnings and accumulations of the husband while he is living separate and apart from his wife.

The trial court held that since the property acquired by the deceased husband was presumptively community property and the executrix had not introduced any evidence to rebut this statutory presumption, the property would be deemed community property and the assets of the estate would be set aside to the surviving wife in lieu of homestead.

■ We would be compelled to accept this conclusion if it were not for the fact that there is a line of Washington cases which support the proposition that where, as here, a husband domiciled in Washington acquires property long after a permanent separation from his wife, the property so acquired is the separate property of the husband.

*Togliatti v. Robertson,* 29 Wn.2d 844, 190 P.2d 575 (1948), was the first case which denied the surviving widow the statutory allowance in lieu of homestead for the reason the property was acquired long after the permanent separation of the parties and therefore was separate property of the husband. In *Togliatti* there was an interlocutory order of divorce but no final decree had been entered. The court reviewed prior Washington cases which considered the status of property acquired after a permanent separation of the spouses.

The *Togliatti* and related cases were analyzed in an article entitled "The Community Property Law in Washington" by Professor Harry M. Cross of the University of Washington School of Law in 15 La. L. Rev. 640 (1955). Professor Cross stated in part at 656:

> It is not, from the *Togliatti* case, entirely clear whether the basis for the court's conclusion was a "separate property agreement" inferred from the long separation . . . or the lack of a community relationship between the spouses. In the most recent case, In re *Armstrong's Estate* [33 Wn.2d 118, 204 P.2d 500 (1949)], separation followed entry of an interlocutory decree of divorce and shortly thereafter the particular asset was acquired by the husband. The court concluded the asset was his separately on the basis of the *Togliatti* case, stating that the wife had made no contribution to the acquisition. This

suggests, at least, that the *Togliatti* reasoning of the lack of a community relationship is controlling.

(Footnotes omitted.)

After pointing out that it is apparently not necessary that there be a "guilty" party to invoke the doctrine, Professor Cross concludes at 657:

> It is this writer's belief, therefore, that whenever there can be shown a permanent separation of the spouses, the subsequent acquisitions of either will be separate property even though there is no dissolution of the marriage. Proving that there has been a permanent separation may be troublesome, and can most easily be done by an action for divorce or separate maintenance, but even in the absence of such litigation there would appear to be no reason to deny possible adequacy of other proof.

The conclusions of Professor Cross find support in *MacKenzie v. Sellner*, 58 Wn.2d 101, 361 P.2d 165, at 105 and 104 respectively:

> The axiom posited from these cases [*Togliatti v. Robertson*, 29 Wn.2d 844, 190 P.2d 575 (1948); *In re Estate of Armstrong*, 33 Wn.2d 118, 204 P.2d 500 (1949)] is that where the spouses, by their conduct, indicate that they no longer have a will to union, then neither may reap the benefits of the community property law, which they would be entitled to had their community relationship remained undisturbed.
>
> The law does favor the continuity of the marriage relationship. We have, however, in analogous situations, declined to apply the rigors of the community property laws to a defunct marriage, where the ends of justice would not be served thereby.

Respondent contends, however, that in *Togliatti v. Robertson, supra, In re Estate of Armstrong*, 33 Wn.2d 118, 204 P.2d 500 (1949), and *MacKenzie v. Sellner, supra*, there had been an interlocutory decree of divorce and nothing remained to be done but secure a final decree based on an affidavit that the parties had not resumed marital relations. The argument is made that these were truly defunct marriages because of the interlocutory decree of divorce. The answer to this, however, is that where one of the parties to

a divorce action dies before the entry of the final decree of divorce the action abates, and the interlocutory decree in its entirety becomes a nullity. *State ex. rel. Atkins v. Superior Court,* 1 Wn.2d 677, 97 P.2d 139 (1939).

An interlocutory order of divorce would be strong evidence of the permanent nature of the separation of the husband and wife. Equally strong evidence is presented in this case because the parties, pursuant to written agreement, had lived *permanently* separate and apart since May 8, 1945. This was as much a defunct marriage as if an interlocutory order of divorce had been obtained.

Respondent argues that since the separation of the parties was due to the wife's ill health, the facts of this case most nearly resemble *Rustad v. Rustad,* 61 Wn.2d 176, 377 P.2d 414 (1963). That contention must be considered in the light of the analysis made in that case at 180:

> The appellants cite such cases as *MacKenzie v. Sellner,* 58 Wn. (2d) 101, 361 P. (2d) 165; *In re Armstrong's Estate,* 33 Wn. (2d) 118, 204 P. (2d) 500; and *Togliatti v. Robertson,* 29 Wn. (2d) 844, 190 P. (2d) 575, in all of which we held that the community property laws will not be applied to a defunct marriage. In each of those cases, there was some action on the part of the spouses which indicated that they had renounced the marriage relationship. Here, the wife was merely confined to a hospital because of mental illness. It is true that she was confined for life, and it may also be true that her husband could have obtained a divorce because of her insanity. But he did not choose to do so; and the record is devoid of any evidence that he ever renounced or denied the marriage relationship. On the contrary, according to the record, he served as guardian of her estate after 1950, and his will, executed in his later years, made provision for her as his wife. The rule set forth in the cited cases is therefore not applicable here.

In the instant case the stipulated facts show that pursuant to the agreement of the husband and wife they lived permanently separate and apart from each other from May 8, 1945 to the husband's death on February 25, 1965. This is conduct which clearly demonstrates "some action on the

part of the spouses which indicated that they had renounced the marriage relationship" as required by *Rustad* to qualify under the Togliatti rule.

Respondent further contends that the separation agreement divided personal property according to a prescribed formula and settled the question of future support or alimony in the event of a divorce and that conspicuously absent is any language effecting a property settlement. There was reference to sale of personal property from "their farm in Chemung Township, County of McHenry, and State of Illinois." This reference, standing alone, does appear to create an ambiguity as to whether this was a rented or owned farm. The ambiguity is eliminated, however, in the agreement of February 23, 1946, which recites that the agreement of May 8, 1945 referred to "the division of all of their property equally between them." In any event, the matter is clearly answered in the unchallenged finding of fact No. 3 which states that pursuant to the agreement "they did, in effect, divide their property."

In one respect the instant case is more indicative of a permanent separation agreement terminating all property and support rights than some of the Washington cases. In this case, the parties had never lived together in the state of Washington or any other community property state and the agreement could not have contemplated the intricacies of community property law.

We find that because of the 9-year separation of the parties between their support and property division agreement and the acquisition of the property by the husband, and the permanent nature of their separation, the Togliatti rule is applicable. The stipulated evidence demonstrates that the parties no longer had a "will to union."

We have considered respondent's arguments relative to the statutory laws relating to community property and the award in lieu of homestead. We are following the exception clearly created in a consistent series of Washington cases.

The assets of the estate are the separate property of the deceased and the order on petition for award in lieu of homestead is reversed.

PEARSON and PETRIE, JJ., concur.