[No. 1974–3.   Division Three.   February 8, 1978.]

*In the Matter of the Estate of*
TIMOFEI NIKIPOREZ.

JAMES VICKERS, *Individually and as Executor, Appel-lant,* v. EVDOKIA KORNEEVNA NIKIPOREZ, *Respondent.*

*Benjamin N. Brunner* and *Elwood Hutcheson,* for appellant.

*E. F. Velikanje* and *Velikanje, Moore & Shore,* for respondent.

McINTURFF, J.—James Vickers, as personal representative and sole beneficiary of the estate of Timofei Nikiporez, appeals from an award in lieu of homestead to Evdokia Nikiporez who, the court found, was the surviving spouse of decedent.

While much of the evidence produced at trial is alleged to be inadmissible, if properly presented and accepted, it would support the following. The decedent was born in Russia, and in 1921 he married Evdokia Nikiporez in a church ceremony at the village of Riedychev. Their marriage was registered on May 19, 1923, in the Ukraine. He was drafted into the Russian army and left home for the front in August 1943. Apparently he was captured on the Russian front and via a prisoner of war exchange, he arrived in the United States, settling in the picturesque Yakima Valley.

He never returned to Russia nor did his wife join him in the United States. In fact, she did not hear from him until about 1962 when he wrote to her. Neither party sought a divorce, and they communicated by letter, the last written in 1970. During that time he sent her money, parcels and photographs. In a letter dated January 2, 1970, he wrote, "From your husband Timofey Zakharovich—good day my wife Evdokia." About that time he also sent her $1,000.

The decedent and Mr. Vickers, who was his neighbor for about 8 years, were friends. In May 1965 when he needed a place to live, decedent bought from Mr. Vickers some land upon which he built a home where he lived until his death in 1973. He was grateful for the land sale and promised to name Mr. Vickers his sole beneficiary.

On January 20, 1966, he fulfilled his promise by executing a will, leaving his estate to Mr. Vickers and appointing him executor. The will was admitted to probate, and Mr. Vickers' appointment as executor was confirmed. The will said, "I hereby state that I am not married and I have no child or any lineal descendant." All but one witness testified that on numerous occasions decedent told them his wife had died in Russia and that he had no living wife or child.

Olex Juchta, a rebuttal witness who lived with decedent at one time, testified that decedent had shown him a photo of a woman and identified her as his wife. The photo was admitted over objection by the estate.

The court found Evdokia Nikiporez was the surviving spouse of decedent and that no homestead had earlier been declared. After ordering all funeral costs and expenses of last sickness and of administration be paid, the court awarded to her $15,000 in lieu of homestead from the balance of the estate.

Mr. Vickers contends the court erred (1) in making several evidentiary rulings and (2) in making the award to Evdokia Nikiporez.

First attacked is the admission of two interrogatories directed to Evdokia Nikiporez. Mr. Vickers argues they are inadmissible because they were not sworn to. On one she said, "Let it be known to all, that I, . . . solemnly state, that I give true/correct testimony to the questions in the enclosed interrogatories . . ." On the other, she said, "Let it be known to all, that I, . . . Solemnly state that I give true/correct replies to the enclosed interrogatories. . . ."

The requirements for oaths and affirmations are set out in RCW 5.28.[1] RCW 5.28.060 provides in pertinent part, "Whenever an oath is required, an affirmation, as prescribed in RCW 5.28.050 is to be deemed equivalent thereto, . . ." RCW 5.28.050 provides:

> Any person who has conscientious scruples against taking an oath, may make his solemn affirmation, by assenting, when addressed, in the following manner: "You do solemnly affirm that," etc., as in RCW 5.28.020.

In turn, RCW 5.28.020 provides, regarding the oath administered to someone other than a witness giving testimony, "the form may be changed to: 'You do solemnly swear you will true answers make to such questions as you may be asked,' etc." These statutes were given a liberal interpretation in *State v. Collier*, 23 Wn.2d 678, 694, 162 P.2d 267 (1945), where the court, after referring to section 6 of article 1 of the state constitution,[2] said:

> This constitutional provision gives a wide discretion as to the mode of administering an oath. The administering officer is, in fact, commanded to employ that mode which he believes will be most binding upon the conscience of the witness. It is clearly not within the power of the legislature to prescribe a set form and require its use in every instance, and, in our opinion, it has not attempted to do so.

*See also In re Ross*, 45 Wn.2d 654, 655, 277 P.2d 335 (1954).

We note also that article 20(3) of the Consular Convention and Protocol between the United States and Russia provides:

> Whenever under the laws of the receiving state an oath is required to be taken in court by consular officers and

---

[1] For an exhaustive discussion of the history of the oath and its place in the common law, see 6 J. Wigmore, *Evidence* §§ 1815–25 (J. Chadbourn rev. 1976).

[2] That section provides:

"The mode of administering an oath, or affirmation, shall be such as may be most consistent with and binding upon the conscience of the person to whom such oath, or affirmation, may be administered."

employees of the consular establishment, an affirmation shall be accepted in lieu thereof.

Thus, we find the statement of solemnity contained in the questioned interrogatories equivalent to the generally used oath and affirm their admission.

Error is next assigned to the admission of the Nikiporez marriage certificate. Mr. Vickers contends there was no pleading or proof of Russian law to establish the requirements of a valid marriage or the authenticity of a marriage certificate. The record indicates the certificate was authenticated by the provincial director of archives who stated he was its legal custodian. His authentication was confirmed by the chief of the state department of archives whose authentication was confirmed by the national director of the department of consular administration whose authentication was confirmed by the United States vice–consul. Under CR 44(a)(2), the qualifications for admissibility of the document have been met. Thus, we find no error.

Mr. Vickers also assigns error to the court's exclusion, under RCW 5.60.030 (the dead man's statute), of his testimony regarding statements made by decedent to him to the effect decedent had no wife or children. We note, first, that a thorough review of the record shows this testimony was introduced subject to the court's ruling on the applicability of the statute. Though the court never decided the matter, it referred several times in its oral opinion to similar statements. Under those circumstances, Mr. Vickers cannot complain of the alleged error.[3]

Mr. Vickers argues strenuously that, assuming the admissibility and truth of all the evidence, the court erred nonetheless in making its award to Mrs. Nikiporez. He contends the homestead statutes are not applicable to marital situations such as this. First, he says we should consider the Nikiporez marriage a mere hollow shell and no longer legally viable. After 30 years of separation, there can

---

[3]Mr. Vickers assigns error to other evidentiary rulings, but we find them without merit because they are irrelevant to the existence of the surviving spouse.

be "no will to union," and all property rights based on a marital relationship must, in effect, be terminated. Secondly, he argues that since our homestead statutes are calculated to prevent dependency of the deceased's family, they do not encompass a marriage where the surviving spouse will not, in fact, be dependent upon this state.

■ The lack of the widow's contacts with this forum and her lengthy separation from the deceased would, indeed, seem to preclude her recovery of the award in lieu of homestead. The underlying principles of the statutory framework appear inapplicable. However, because of a long line of unquestioned Washington precedent, we are constrained to affirm the court's award to Mrs. Nikiporez.

The homestead allowance under RCW 11.52.010[4] has always enjoyed a high priority in Washington law and is preferred as are other debts against the estate. *In re Estate of Boston,* 80 Wn.2d 70, 75, 491 P.2d 1033 (1971). The statutes creating the award have been considered to give an absolute right to the surviving spouse to the statutory sum. *In re Estate of Welch,* 200 Wash. 686, 94 P.2d 758 (1939). The surviving spouse is entitled to the award when he or she complies with all of the conditions contained in the statutes. *Cody v. Herberger,* 60 Wn.2d 48, 371 P.2d 626 (1962).

Nonetheless, several recent cases have suggested that where husband and wife have permanently separated without an intent to reunite, one spouse may not claim benefits of the community relationship against the other.[5] Repre-

---

[4]The statute provides:

"If it is made to appear to the satisfaction of the court that no homestead has been claimed in the manner provided by law, either prior or subsequent to the death of the person whose estate is being administered, then the court, after hearing and upon being satisfied that the funeral expenses, expenses of last sickness and of administration have been paid or provided for, and upon petition for that purpose, *shall award and set off to the surviving spouse,* if any, property of the estate, either community or separate, not exceeding the value of twenty thousand dollars at the time of death, exclusive of general taxes . . ." (Italics ours.)

[5]*See MacKenzie v. Sellner,* 58 Wn.2d 101, 361 P.2d 165 (1961); *In re Estate of Armstrong,* 33 Wn.2d 118, 204 P.2d 500 (1949); *Togliatti v. Robertson,* 29

sentative of those cases is *In re Estate of Osicka,* 1 Wn. App. 277, 461 P.2d 585 (1969), where the court found that by their conduct the husband and wife had in effect renounced the marital relationship and were not entitled to receive the award in lieu of homestead from the deceased spouse's estate. There the parties had never lived together in this state or any other community property state. They were separated for 9 years prior to the husband's death under an agreement to live separate and apart. The agreement released each of them from the obligations of support or alimony for the other. Under those circumstances, the court concluded the parties no longer had a "will to union," and as a result the widow could not claim the award in lieu of homestead from her husband's estate.

For two reasons, the "shell of a marriage"[6] cases are not applicable here. First, there is evidence the Nikiporez couple had a desire to reunite but was kept from doing so by physical infirmities.[7] Where there is a "will to union," cases such as *Osicka* are distinguishable. Secondly, the homestead statutes have been recently amended. Until 1967, the award could be made only from the *community* property of the estate, but now *both separate and community* property

---

Wn.2d 844, 190 P.2d 575 (1948); *Yates v. Dohring,* 24 Wn.2d 877, 168 P.2d 404 (1946); *In re Estate of Osicka,* 1 Wn. App. 277, 461 P.2d 585 (1969).

[6]See cases cited in footnote 5. The term apparently was coined in *MacKenzie v. Sellner,* 58 Wn.2d 101, 104, 361 P.2d 165 (1961), where the court said:

> In the instant case, a divorce action had been commenced, the parties were living separate and apart, and a property settlement agreement had been executed and subsequently approved by the court, which determined the status and character of Mr. and Mrs. Sellner's present and future property from the date of the property settlement agreement, as well as determining the status and character of their present and future obligations. *Nothing but the shell of the marriage contract remained* at the time the tort occurred.

(Italics ours.)

[7]In dictum in *Krumenacker v. Andis,* 38 N.D. 500, 512–14, 165 N.W. 524, 527–28 (1917), the court hypothesized a tableau similar to that presented here. The court said:

> The exemption laws are always liberally construed, and there might exist circumstances where the husband lived within our state and the wife for the

are subject to the award. The *Osicka* line of cases dealt with the characterization of property acquired while the spouses were living separate and apart because, as the court noted at page 280, under the old statute:

> time being was a resident of a foreign nation or a resident of a sister state, where, notwithstanding that fact, they could, with propriety and with some degree of legality lay claim to such exemptions. For instance, had the husband left Austria–Hungary for the United States, and come to North Dakota with the purpose of establishing a permanent residence and home, and with the understanding with his wife before he left—it being assumed for the purpose of this illustration that the husband is poor,—that as soon as he was able to earn enough money to send for his wife he would do so, and that intention was present with both the parties in good faith at all times; and if there were correspondence between them which showed that it was the intention of both that the wife should follow the husband as soon as the husband could send for her, or as soon as she could by any means reasonable make the trip to join her husband; or it was shown that she had fallen sick and was unable physically to make the trip, yet always had the desire and intention of doing so as soon as she became physically able;—in such case, with the liberal construction given to the exemption laws, such person might be granted exemptions. It is no fault of hers in such case that she cannot be with her husband. She desires to be, she always intends to be, and the domicile of her husband as a general rule of law being that of the wife, and intent being at the very foundation of residence, such good intention, with the good faith otherwise shown, may be sufficient for the law to say that her real residence is in fact with her husband, though she be physically absent therefrom. This same reasoning would apply to the husband coming from a sister state under similar circumstances and conditions. If there is a good and sufficient reason why the wife is not with her husband, which is based upon good faith, and is coupled with an intent and desire on the part of the wife to join her husband at the first opportunity, or as soon as it is possible, whatever the cause may be which prevents her joining him, then in such case by reason of the liberality of the construction of the exemption laws, the construction thereof may be extended to include cases of this kind. On the other hand, where testimony shows that an alien wife whose husband has come to this country and established a home in one of the states has always maintained her residence in the foreign land or nation, has always maintained her allegiance to the authority of such foreign state, who never has intended or expressed any intention, or given any evidence of an intention, to become a resident of the state in which her husband has established his home, has never expressed any desire to renew the family relations or again make the home complete by joining her husband in his home, or expressing any desire or intention to do so, she can have no benefit of the exemption laws of this state, and the exemption laws were not meant to include such persons. *The most liberal construction that can be placed upon the exemption laws is, they are for the benefit and protection of the residents, the family, and home of residents within this state, or at the very farthest, those who have a present*

The parties agreed that if the property is found to be separate property of the deceased husband, the petition of the wife should be dismissed; and if the property or any portion of it should be found to be community property of the husband and wife, the petition should be granted by reason of the language in [the statutes] . . .

Thus, the rationale of the "shell of a marriage" cases is not applicable to these facts.

Nor can this court prevent the award to Mrs. Nikiporez on the grounds she never lived in this jurisdiction. In *In re Estate of Lavenberg,* 104 Wash. 515, 177 P. 328 (1918), the court considered the legislative intent underlying the in–lieu–of–homestead award. Construing a statute identical in material respects to the one in question, the court rejected the argument that the nonresidence of the surviving spouse was sufficient to prohibit an award in lieu of homestead. The *Lavenberg* court said at page 518:

If the widow were claiming a homestead, or property in lieu of a homestead, under the general law, she must have been a resident of the state at the time to take the benefit of the statute, but to the setting aside of the homestead or property in lieu thereof, where the estate does not exceed in value a certain sum, the widow is in no sense a contending party and the court is given no discretion. A judicial duty imposed by the legislature compels the setting apart of the property, and against the order of the court nothing will avail unless it be the voluntary renunciation of the widow. It is the policy of our

*intention in good faith to become residents of the state and members of the family or home of some person who is a resident of, and who has his home within our state.*
(Italics ours.)

In replies to the interrogatories Mrs. Nikiporez said:

[M]y husband, approximately in 1968–69, invited me to visit him in the USA, but I, being already old and ill could not venture on such a distant trip. And I, in turn, invited him to return to the USSR to live together.

. . .

Approximately in 1971, I wrote to him to come to the USSR, but he referred to a poor state of health, that he had an eye operation and spent more than a month in the hospital and that he lost [his] eyesight and could not travel anyplace.

probate law, now evidenced by §§ 103, 104, Laws of 1917, pp. 670, 671, that compels rejection of the general rule that homesteads and lieu exemptions cannot be claimed by nonresidents. *For, as against an imperative duty, no qualification of residence being imposed, the courts will look only to the relationship and not to the place of residence. "It is an absolute right that the statute gives unqualified by collateral conditions." Griesemer v. Boyer* [13 Wash. 171, 43 P. 17 (1895)].

(Italics ours.) *Lavenberg* has been followed in *In re Estate of Johnson,* 114 Wash. 61, 194 P. 834 (1921); *In re Estate of Pompal,* 150 Wash. 242, 272 P. 980 (1928), and *In re Estate of Pugh,* 22 Wn.2d 83, 154 P.2d 308 (1944). Therefore, we cannot allow the mere nonresidence of Mrs. Nikiporez to preclude the award to her.

Nonetheless, Mr. Vickers suggests that since Mrs. Nikiporez was not dependent upon her estranged husband at the time of his death, she should not be entitled to the award because it has been considered a measure "calculated to prevent dependency." *In re Estate of Small,* 27 Wn.2d 677, 682, 179 P.2d 505 (1947). He relies on cases such as *In re Estate of Hewett,* 358 P.2d 579, 581 (Alaska 1961),[8] for the proposition that:

[I]f no support were being furnished at the time of death, and if there were then no obligation to render support, the surviving spouse is not a widow qualified to receive the statutory allowance.

Washington precedent prohibits us from reaching that result. In *In re Estate of Welch,* 200 Wash. 686, 94 P.2d 758 (1939), the court approved an award in lieu of homestead to a widow who had been married only four hours before her husband died. The trial court there denied her request for the award on "what is termed equitable grounds," *In re Estate of Welch, supra* at 689, because the award would have diminished the interest of deceased's

---

[8]Such cases are collected in Annot., *Abandonment, Desertion, or Refusal to Support on Part of Surviving Spouse as Affecting Marital Rights in Deceased Spouse's Estate,* 13 A.L.R.3d 446 (1967).

minor incompetent heir in the estate. The court said at page 689:

> We think the court erred in denying appellant's petition because of the short duration of the marriage and the further fact that such an award would diminish the distributive share of the minor.
>
> We have consistently held that award statutes, . . . give an absolute right, which is not subject to collateral conditions and should not be influenced by the countervailing equities;

Since our Supreme Court has held strictly to the rule that the award in lieu of homestead is not subject to conditions other than those provided within the statutes, *i.e.*, no earlier homestead claim and other expenses being paid, we cannot allow equities such as those asserted by Mr. Vickers to deprive Mrs. Nikiporez of the legislative entitlement to the award.

■ Finally, Mr. Vickers contends that where there has been an intentional abandonment of the marriage by the surviving spouse for an extended period of time, he or she forfeits the right to a homestead allowance especially where it would be in conflict with decedent's will. There is substantial authority for that proposition,[9] but we find it inapplicable. Absent the most clear and explicit language confirming a voluntary relinquishment of the award as a known right, a waiver will not be found. *In re Estate of Boston, supra* at 75, states:

> While we can conceive of a possible set of circumstances in which a waiver could be found without an express written document, such circumstances are not present here. There is no evidence that appellant knew of the right to a homestead award, much less that he intentionally surrendered it.

Likewise, while these circumstances might be sufficient to eliminate the requirement of a written waiver, there is no

---

[9]*See In re Estate of Van Meter,* 214 So. 2d 639 (Fla. Dist. Ct. App. 1968); *Barlow v. Barlow,* 156 Fla. 458, 23 So. 2d 723 (1945); *Swift v. Reasonover,* 168 Tenn. 305, 77 S.W.2d 809 (1935); *In re Estate of Fenyo,* 105 Pa. Super. 560, 161 A. 606 (1932); *Good v. Good,* 293 S.W. 621 (Tex. Civ. App. 1927).

evidence Mrs. Nikiporez knew of the homestead award, let alone that she intentionally relinquished it.

The judgment of the Superior Court is affirmed.

MUNSON, C.J., and GREEN, J., concur.

Petition for rehearing denied March 3, 1978.

Review denied by Supreme Court July 21, 1978.