# IN THE OREGON TAX COURT

## KELLER
*v.*
## DEPARTMENT OF REVENUE
(TC 1394)

Lee A. Hansen, Brown, Hansen & Steenson, Portland, represented plaintiff.

Elizabeth S. Stockdale, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered April 30, 1981.

## CARLISLE B. ROBERTS, Judge.

The plaintiff appeals from the defendant's Order No. I 80-3, dated February 26, 1980, relating to adjustments made to the plaintiff's personal Oregon income tax returns for the tax years 1975, 1976 and 1977. In each of these years, the defendant's income tax auditor adjusted Mrs. Keller's returns by adding to her gross income one-half of the earnings for personal services rendered by her husband in the State of Washington. The pertinent facts have been stipulated, as follows:

"Plaintiff, Astrid S. Keller, and her husband, Charles Keller, moved to Seaside, Oregon, in 1968, and were both residents of Seaside until 1973, when Mr. Keller became a resident of Centralia, Washington, because of a promotional transfer by his employer, Pacific Power & Light Co. Plaintiff continued as a resident of Seaside because she found it to be a nice place to live, and she still resides there, while Mr. Keller has resided in Centralia since his move in 1973. The Kellers, during this period, visited each other frequently both in Seaside and in Centralia, but plaintiff has never had any intention of moving to Centralia and her husband intends to reside in Centralia so long as his employment is there. During the period 1975-1977, there was no breakdown or discord in the Kellers' marriage relationship.

"At the time plaintiff's husband moved to Centralia, Washington and thereafter, the Kellers never considered whether or not there would be any change in the status of Mr. Keller's earnings as a Washington resident, from the status of his earnings when he was an Oregon resident, and thus there was no agreement discussed between them concerning the wages received from their respective employers. Throughout 1975 through 1977, plaintiff was employed, and paid all of her expenses from her employment earnings, including the mortgage payment on the Seaside home. Amounts not so expended were deposited in the Kellers' joint savings account which had been opened prior to Mr. Keller's move to Centralia. Mr. Keller, during this period, generally caused a portion of each of his paychecks to be deposited in the joint savings account, and no record was kept of the amounts deposited by each of the Kellers. Both Mr. and Mrs. Keller understood that the funds deposited in the joint savings account were available to either one or both of them at any time.

"Plaintiff and her husband filed joint federal income tax

returns for the years 1975 through 1977, and plaintiff filed separate Oregon returns reporting all of her employment income and omitting all of the income her husband received from his employment in Centralia, Washington."

ORS chapter 316, the Personal Income Tax Act of 1969, provides in ORS 316.007 that the policy of the State of Oregon is "to impose a tax on residents of this state measured by taxable income wherever derived * * *." ORS 316.048 defines the taxable income of an Oregon resident:

"The entire taxable income of a resident of this state is his federal taxable income as defined in the laws of the United States, with the modifications, additions and subtractions provided in this chapter."

OAR 150-316.048 states:

"*Community property income.* An Oregon taxpayer whose spouse resides in a community property state is taxable upon the share of his spouse's community property income which is considered earned by the Oregon taxpayer according to the laws of the community property state."

ORS 108.015(1) was enacted in 1975 in recognition of the principle that a wife's civil rights should be the same as the husband's (i.e., overthrowing the common law rule that the wife's domicile was established by the husband):

"Each married person may establish and maintain a domicile in the State of Oregon as if that person were not married."

Washington is a community property state. RCW 6.16.030 provides that:

"Property * * * acquired after marriage by either husband or wife or both, is community property * * *."

Prior to its amendment in 1972, RCW 26.16.140 provided:

"The earnings and accumulations of the wife and her minor children living with her, or in her custody *while she is living separate from her husband,* are the separate property of the wife." (Emphasis supplied.)

Prior to 1972, the Washington Supreme Court, giving consideration to RCW 26.16.140, regularly used the expression "living separate and apart" as synonymous with the statute's words "living separate."

This section was substantially amended in 1972, the pertinent part thereof (applicable to the tax years here in question) then reading:

"When a husband and wife are *living separate and apart,* their respective earnings and accumulations shall be the separate property of each * * *." (Emphasis supplied.)[1]

The general rule is that the law of the domicile governs disposition of personal property. *Buresh v. First National Bank,* 10 Or App 463, 469, 500 P2d 1063, 1065 (1972), citing *Restatement (Second) Conflict of Laws* 125, § 264 (1971). The status of community property in Washington is determined at the date of its acquisition. *In re Witte's Estate,* 21 Wash2d 112, 150 P2d 595 (1944). The personal earnings of the husband belong to the community. *Idem. Seaborn v. Poe,* 282 US 101, 51 S Ct 58, 75 L Ed 239 (1930).

In the present case, the state of the husband's domicile, Washington, provided by statute that one-half of his personal earnings immediately vested in his wife, at the time he became entitled to the earnings, and the wife's domiciliary state, Oregon, had ruled that the wife was taxable upon community income to which she was entitled "according to the laws of the community property state."

Plaintiff's first objection to the Oregon income tax is that the husband's Washington earnings were not community property because the plaintiff had never been domiciled in Washington. Stating that there were no Washington cases in point, she cited *Lane-Burslem v. Commissioner,* 70 TC 613 (1978), and *Marguerite T. Payne,* 1 TC 360 (1942). The court

---

[1] RCW 26.16.140, before its amendment in 1972, used the words "living separate" but, in many cases, the Washington Supreme Court in deciding cases before 1972 involving "living separate," used the specific words "living separate and apart" as synonymous with the statutory words. *See,* for example, *Kerr v. Cochran,* 65 Wash2d 211, 396 P2d 642 (1964); *Rustad v. Rustad,* 61 Wash2d 176, 377 P2d 414 (1963); *MacKenzie v. Sellner,* 58 Wash2d 101, 361 P2d 165 (1961); *Togliatti v. Robertson,* 29 Wash2d 844, 190 P2d 575 (1948). Other community property states also use the expression "living separate and apart" with the same meaning attributed to it as in Washington. *See,* for example, *Makeig v. United Security Bank & Trust Co.,* 112 Cal App 138, 296 P 673, 675 (1931).

Professor Cross (often quoted in Washington opinions relating to community property) has written: "Nothing in earlier Washington cases establishes the content of the 'living separate' language of the pre-1972 statute, but 'living separate and apart' in the amended version obviously should have the same meaning." Harry M. Cross, *The Community Law in Washington,* 49 Wash L Rev 729 (1974).

finds that these cases are not in point because of the substantial differences in the pertinent statutes from those laws which must be followed in this suit.[2] However, the fact that the husband and wife were living in different states has not, per se, terminated the "community" in other cases. *Matter of Estate of Nikiporez,* 19 Wash App 231, 574 P2d 1204 (1978); *In re Estate of Osicka,* 1 Wash App 277, 461 P2d 585 (1969); *Rustad v. Rustad,* 61 Wash2d 176, 377 P2d 414 (1963).

But the most cogent argument made by plaintiff is that the husband and wife were "living separate and apart" and so come within the provision of the amended RCW 26.16.140, making the husband's Washington earnings solely his own. Plaintiff argues that "[i]t seems doubtful that a Washington court would find that plaintiff and her husband are not 'living separate and apart' when they have separate domiciles in separate states and when the plaintiff never was domiciled in Washington." (Pl Pre-trial Memo, 6.) As authority for this proposition, plaintiff cites *Kerr v. Cochran,* 65 Wash2d 211, 396 P2d 642 (1964), and *Togliatti v. Robertson,* 29 Wash2d 844, 190 P2d 575 (1948). In the first case cited, the husband and wife were separated and eventually divorced; in the second, the property in dispute was U.S. Savings Bonds bought by the husband with money earned by him after the entry of an interlocutory divorce decree. These cases are readily distinguishable on their facts from those in the present suit. The preponderance of the disputed evidence in *Kerr v. Cochran* tended to prove a "defunct marriage."

An examination of decisions in several of the community property states convinces the court that the phrase "living separate and apart" must be deemed words of art in community property states. There is recognition by courts in those states that there may be good reason for a husband and wife to live apart from each other, without fault; (e.g., one spouse is in a sanitarium or a mental institution for many years; economic reasons separate the couple for a substantial period of time; emigration visas may be withheld). But the

---

[2] The Internal Revenue Service made a similar argument in the case of *Paul Cavanagh,* 42 BTA 1037 (1940), and *Herbert Marshall,* 41 BTA 1064 (1940), cited by plaintiff, but in each of those cases the court followed the common law rule that the wife's domicile follows that of the husband (even where there is a continuing separation but "without fault"; i.e., no desertion of one party by the other). Because of Oregon's statute, ORS 108.015, these cases are also distinguishable.

courts distinguish between the "defunct marriage" or "abandoned marriage" from that situation in which "a will to union" continues.

■ The phrase "living separate and apart" is not defined in the statute. The decisions in Washington and other jurisdictions indicate that the bare fact that the spouses are living in different places does not constitute "living separate and apart," absent a marital rift and an intent to separate permanently. The conclusion to be drawn from the cases is that "living separate and apart" requires permanent separation involving absence of will to live together as man and wife and a lack of present intention to resume the marital relationship. The cases do not require an intent to dissolve the marriage by divorce, but do require more than a trial separation, since in the latter instance the spouses have not decided whether to resume living together or to separate permanently. The trial separation may be temporary for the purpose of resolving their difficulties so that they can live together in greater harmony.[3]

It is readily seen that the difficult problem presented to the courts in these cases is to weigh the many different factual situations and degrees of "separateness" which are presented and to determine whether the marital community has terminated and, if so, the date thereof. *In re Estate of Osicka, supra,* and *Hokenson v. Hokenson,* 23 Wash2d 908, 162 P2d 592 (1945). These two cases were illustrative of those in which the court found "no will to union." The *Hokenson* case, however, suggests that the absence of one spouse from the state for protracted periods (as in the present suit) does not terminate the community, in and of itself. In the *Matter of Estate of Nikiporez, supra,* the court held that the mere nonresidence of the testator's alleged Russian wife, who had never lived in the State of Washington, did not preclude an award to her in lieu of homestead, pursuant to the Washington statute. In *Russell v. Graumann,* 40 Wash 667, 82 P 998 (1905), the court commented at length that the living apart of husband and wife did not necessarily require a finding of separation which would affect the marital community:

---

[3] *See* Harry M. Cross, *The Community Property Law of Washington,* 49 Wash L Rev 729 (1974), and *Equality for Spouses in Washington Community Property Law— 1972 Statutory Changes,* 48 Wash L Rev 527 (1973).

"* * * The evidence discloses that for about three years the deceased had been residing in Spokane, where he pursued his occupation as a painter. During at least a part of that time the respondent [wife] was not in Spokane, but it is not established by the evidence, as we view it, that she was not at any time in Spokane with her husband. During his last illness, and at the time of his death, she was in the state of Pennsylvania. But, assuming that respondent may not at any time have been with her husband in the city of Spokane, it does not follow from that fact alone that the family relationship had in a legal sense been severed. It is not necessary that the husband and wife shall at all times reside together under the same roof, in order that the legal status of the family may be preserved. * * * Such absence may be a strong evidence of affection and regard for the family, rather than otherwise. It will not do to say that in such cases the family status is destroyed by somewhat continued absence of the husband. There is nothing in this record to show that the deceased husband of respondent did not establish his residence in this state for the purpose of providing for his family, or that respondent and her children did not intend at some time to join him here. There is no positive evidence in the case that any intention ever existed on the part of either husband or wife to sever the family relationship. Any conclusion of that kind is a mere inference from the fact that the husband was in Washington and respondent was in Pennsylvania." (82 P 999-1000.)

The foregoing quotation is particularly pertinent to the present case. *Makeig v. United Security Bank & Trust Co.*, 112 Cal App 138, 296 P 673 (1931), also holds that "living separate and apart" does not apply to a case where a husband and wife reside temporarily in different places, due to social or economic reasons.

Based upon the facts presented and the applicable case law, the court concludes a Washington court, presented with the question, would rule that Mr. and Mrs. Keller were not living separate and apart but clearly were maintaining a marital community.

The plaintiff's last argument is one of unconstitutional discrimination; viz., if the court finds that RCW 26.16.140 does not apply because plaintiff and her husband are not "living separate and apart," then ORS 316.048, as interpreted by the department's rule, OAR 150-316.048, must be held to be in violation of Or Const, art I, § 32 (requiring that

"all taxation shall be uniform on the same class of subjects"). Plaintiff also cites the U. S. Constitution (presumably, US Const, art XIV, but it is not specified).

Unconstitutional discrimination, simply stated, occurs when persons who come within identical laws and the same statutory classification are treated differently under those laws. Plaintiff argues:

> "Under the above regulation [OAR 150-316.048] plaintiff must report all of her earnings in Oregon and one-half of her husband's Washington earnings.

> "To impose on an Oregon taxpayer only a portion of another state's property law without imposing all of the benefits and burdens of the other state's law creates an obvious discrimination." (Pl Pre-trial Memo, 10.)

In legal concept, the plaintiff is not required to report one-half of her husband's Washington earnings. She must report one-half of a sum, measured by her husband's salary, which, under the laws of the State of Washington, are her earnings (following the community property thesis that each spouse contributes equally to the marital community, although their contributions may be very different in kind).[4]

■ As stated in *Lawrence et al v. State Tax Commission of Mississippi*, 286 US 276, 52 S Ct 556, 76 L Ed 1102, 1105, 87 ALR 374, 376-377, 1 CCH STC ¶ 226 (1932):

> "The obligation of one domiciled within a state to pay taxes there, arises from the unilateral action of the state government in the exercise of the most plenary of sovereign powers, that to raise revenue to defray the expenses of government and to distribute its burdens equably among those who enjoy its benefits. Hence, domicile in itself establishes a basis for taxation. Enjoyment of the privileges of residence within the state, and the attendant right to invoke the protection of its laws, are inseparable from the responsibility for sharing the costs of government. [Citations omitted.] The Federal Constitution imposes on the states no particular modes of taxation, and apart from the specific grant to the Federal government of the exclusive power to levy certain

---

[4] The Washington salary income is not subjected to double taxation, of course, because Washington does not impose a personal income tax law. If it did, the taxpayer would be entitled to a credit for Oregon personal income tax purposes for the taxes paid to Washington upon the same income. ORS 316.082.

limited classes of taxes and to regulate interstate and foreign commerce, it leaves the states unrestricted in their power to tax those domiciled within them, so long as the tax imposed is upon property within the state or on privileges enjoyed there, and is not so palpably arbitrary or unreasonable as to infringe the 14th Amendment. * * *"

*See also Central Hanover Bank & T. Co. v. Kelly,* 319 US 94, 96-97, 63 S Ct 945, 947, 87 L Ed 1282, 1285 (1943). The state's power to tax is patent and the plaintiff's charge of discriminatory treatment is not well founded.

Defendant's Order No. I 80-3 is affirmed. Inasmuch as this appears to be a case of first impression, the parties shall pay their own costs.